**Lieutenant Louis P. FONT, Petitioner,**

**v.**

**Melvin LAIRD, Secretary of Defense; Stanley R. Resor, Secretary of the Army; Lt. General Jonathan O. Seaman, Commanding General, First United States Army, Fort George G. Meade, Maryland, Defendants.**

**Civ. No. 70–716H.**

United States District Court,
D. Maryland.

July 24, 1970.

Marvin M. Karpatkin and Karpatkin, Ohrenstein & Karpatkin, Rhoda H. Karpatkin, Michael N. Pollet, Melvin L. Wulf, New York City, and Elsbeth Levy Bothe, William Zinman, Baltimore, Md., for petitioner.

George Beall, U. S. Atty., and Francis S. Brocato, Asst. U. S. Atty., Baltimore, Md., for defendants.

## MEMORANDUM OPINION

HARVEY, District Judge:

Petitioner, a First Lieutenant in the United States Army, is presently assigned to the Office of the Adjutant General, Division of Military Personnel Affairs at Fort Meade, Maryland. In this habeas corpus proceeding, he maintains that he is entitled to be discharged from the Army as a conscientious objector under applicable Army regulations and under various provisions of the United States Constitution.

This then is another in the rash of cases that have in recent months come before this and other courts in the Fourth Circuit in which a member of the armed services has sought the issuance of a writ of habeas corpus which would have the effect of granting the serviceman in question a discharge. I would refer to the Fourth Circuit cases of United States ex rel. Brooks v. Clifford, 409 F.2d 700 (1969); United States ex rel. Tobias v. Laird, 413 F.2d 936 (1969) and to various District Court decisions of this Court, including Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968); Reitemeyer v. McCrea, 302 F.Supp. 1210 (D.Md.1969); Talford v. Seaman, 306 F.Supp. 941 (D.Md.1969); Donigian v. Laird, 308 F.Supp. 449 (D.Md.1969); McGehee v. McKaney, 312 F.Supp. 1372 (D.Md.1970); Lohmeyer v. Laird, 318 F.Supp. 94 (D.Md.1970); and Keil v. Seaman, 314 F.Supp. 816 (D.Md.1970).

No good purpose would be served by a further recitation of the statute and regulations under which a serviceman on active duty may apply for a discharge as a conscientious objector. AR 635–20 sets forth the Army procedures for making such application. For a full discussion of the law and the regulations, see the *Brooks* case, 409 F.2d at pages 702–703 and also the *Reitemeyer* case, 302 F.Supp. at pages 1211–1213. Suffice it to say that the test to be applied by a court in reviewing action taken by one of the services is whether there was a basis in fact for the ultimate finding that the petitioner in question was not a bona fide conscientious objector.

It appears from the record here that petitioner entered the United States Military Academy in July, 1964, and that he was graduated in the upper five per cent

of his class as a "Distinguished Graduate" in June, 1968. During his four years at the Academy, petitioner received numerous honors and qualified to attend the John F. Kennedy School of Government at Harvard for a two-year graduate course leading to a Master of Arts Degree in Public Administration.

Petitioner began his studies at Harvard in the fall of 1968 and was assigned to Headquarters, First U. S. Army Student Detachment. On February 27, 1970, petitioner submitted to Headquarters, Department of the Army, through Respondent Seaman as Commanding Officer of the First U. S. Army, an application for a discharge as a conscientious objector. The essence of that application is contained in the following paragraph (paragraph 2, page 1 of petitioner's application) ;

"On grounds of conscience I can in no way participate in the Armed Forces in any capacity during the Vietnam War. My religious beliefs compel me to regard the Vietnam war [as] immoral and unjust and I cannot contribute in any capacity to an immoral war."

Thereafter, on March 13, 1970, petitioner received notice by telephone that he had just been reassigned to duty at Fort Meade, Maryland. On March 16, he received written confirmation of that order and was told to report to Fort Meade on March 17. Petitioner so reported.

The psychiatric examination required by AR 635–20 was conducted by Major Frederick Fisher on March 18, 1970. In his report, which was written the same day, Major Fisher specifically found petitioner to be sincere and without "evidence of a thought disorder." The report concluded that "Subject Officer is cleared for any administrative and judicial disposition as deemed fit by Command."

Also as required by Army regulations, petitioner was interviewed on March 18 and again on March 20, 1970 by Major Billy M. Whiteside, a Methodist chaplain, whose report is dated March 23, 1970. Major Whiteside summarized his findings as follows:

"a. I, personally, find no basis in which to question nor doubt the sincerity of Lieutenant Font in his convictions regarding his course of action.

"b. It is quite evident that the primary source of his convictions is religious and his interpretation of Christian principles and ideals are in keeping with the fundamental teachings he received in his home and church while growing up.

"c. I was deeply impressed with his sincerity and the analytical formulation of his conclusion."

Finally, on April 14, 1970, the hearing required by the Regulations to be held before an O-3 officer was conducted by Major Donald Cukjati. The record contains an 88-page, single spaced transcript of that hearing, as well as the verified statement of Major Warner D. Stanley III which was introduced at the hearing. At this adversary proceeding, petitioner was represented by his attorneys. Petitioner testified in his own behalf and also called as witnesses Dr. Paul K. Deats, a Methodist clergyman and professor at the Boston University School of Theology; Dr. Charles P. Price, an Episcopal minister and Preacher at Harvard University; Dr. John M. Swomley, Jr., a Methodist minister and professor at the St. Paul School of Theology at Kansas City; and Major John R. Landry and Mr. Charles Sweet, both of whom were graduate students at the Kennedy School of Government.

Following this hearing, on April 22, 1970, Major Cukjati issued his findings of fact, determining petitioner to be sincere in his beliefs but recommending that his application for discharge be denied on the ground that petitioner did not qualify as a conscientious objector under AR 635–20, since he objected merely to participation in a particular war.

The Adjutant General at Fort Meade, Colonel H. J. Webb, concurred in these findings and on April 22 forwarded to the Adjutant General, Department of the Army, a recommendation that petitioner's application be denied on the ground of selective conscientious objection. Colonel Webb made no specific finding as to petitioner's sincerity.

The final disposition of petitioner's application was made by the "Class I-O Conscientious Objector Review Board." On June 2, 1970, the Board prepared a written opinion disapproving petitioner's application. Several days later, on June 11, Major Rodney E. Hurt of the Adjutant General's office informed petitioner of the Board's action, stating: (1) that petitioner lacked "the depth of sincerity to qualify for discharge as a conscientious objector under the provisions of AR 635–20"; and (2) that petitioner's claim was based on objection to a particular war as prohibited by AR 635–20, paragraph 3(b) (4).

On June 12, 1970, petitioner was ordered to report to Fort Benning, Georgia, on June 18 to attend a two-month Infantry Officer Basic Course and then to join the 176th Replacement Company on September 28 (which petitioner alleges is scheduled for deployment to Southeast Asia).

On June 16, 1970, petitioner filed the pending petition for a writ of habeas corpus in this Court. In particular, his petition is based upon the following grounds:

(1) That Major Hurt's finding of insincerity is arbitrary, capricious, and without basis in fact;

(2) That Major Hurt's finding that petitioner did not qualify as a conscientious objector under AR 635–20, "as properly interpreted and applied," was without basis in fact;

(3) That petitioner was denied his right to procedural due process by being prevented from submitting a legal memorandum to Major Cukjati prior to his recommendation, by being denied access to his file as it was submitted to the Conscientious Objector Review Board, and by being denied the right to an appearance at the Department of the Army level; and

(4) That denial of C.O. status because of objection to participation only in a particular war constitutes a violation of the Free Exercise and Establishment Clauses of the First Amendment, the Due Process Clause of the Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

This Court has heretofore entered temporary restraining orders and a preliminary injunction, enjoining respondents from removing petitioner from this District during the pendency of this action.

■ Several of the questions here can be disposed of summarily. First, it is clear that petitioner has not been denied procedural due process by the Army. Indeed, the hearing he was afforded was a much more extensive one than is usually the case in proceedings of this sort. He was represented by experienced counsel who not only participated in the questioning of witnesses but who were further permitted to present a summation and final argument in petitioner's behalf. As noted hereinafter, the principal issues in this case, in any event, are questions of law, and those issues have been very fully briefed and argued in this Court.

■ Next, I would note that the Army based its rejection of petitioner's application first on the factual finding that petitioner's beliefs were not sincerely held. After reviewing this voluminous record, I cannot agree. Although Font did delay the filing of his application until February, 1970, I do not thereby conclude that he was insincere in his opposition to the Vietnam war. There may be some evidence of *uncertainty* here, but not enough to constitute a basis in fact for denying the application on the grounds of *insincerity*. The Hearing Officer found him sincere, and I would agree.

The crucial issue in this case is whether an admittedly selective conscientious objector is entitled to the discharge provided under Army regulations. The regulations themselves clearly provide that he is not.

AR 635–20, paragraph 3(b), in part provides as follows:

"Requests for discharge after entering military service will not be accepted when * * * (4) based on objection to a particular war."

But beyond that, the statute itself contains similar language. This is Section 6(j) of the Military Selective Service Act of 1967, which provides, in part, as follows:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

The facts here clearly show that petitioner *is* a selective objector. He candidly so admitted in his application and at the hearing. Substantial legal questions are thereby raised in this case.

Petitioner's argument that Section 6(j) of the Military Selective Service Act requires recognition of selective conscientious objections is an interesting one but ignores clear and recent authority to the contrary. Indeed, the most recent Supreme Court case construing Section 6(j) is Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), decided on June 15, 1970. Language from that case shows that the Supreme Court construes the words "participation in war in any form" to mean participation in all wars or in any war at any time. On page 339, 90 S.Ct. on page 1796, there is this statement (referring to United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)):

"The Court [in *Seeger*] made it clear that these sincere and meaningful beliefs which prompt the registrant's objections *to all wars* need not be confined in either source or content to traditional or parochial concepts of religion." (Emphasis added)

At pages 339–340, 90 S.Ct. at page 1796, the following appears:

"What is necessary under *Seeger* for a registrant's conscientious objection *to all war* to be 'religious' within the meaning of § 6(j) is that * * *." (Emphasis added)

Further, at page 340, 90 S.Ct. at page 1796:

"If an individual deeply and sincerely holds beliefs which are purely ethical or moral in source and content but which nevertheless impose upon him a duty of conscience to refrain from participating *in any war at any time*, those beliefs certainly occupy * *." (Emphasis added)

At page 342, 90 S.Ct. 1792, 26 L.Ed.2d 308, there is another reference to "in all wars." Furthermore, in the *Seeger* case, itself, 380 U.S., at page 173, 85 S.Ct., at page 858, is this language:

"The section excludes those persons who, disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations *that war is wrong* and that they will have no part of it." (Emphasis added)

■■ Clearly, then the Army regulation comports with the meaning of the statute and on its face would not permit petitioner's application to be granted. It follows, therefore, that if the statute is constitutional, the Army regulations are also constitutional, as they do no more than follow the language of the statute.

We come to the final question before the Court, namely the constitutionality of the statute, Section 6(j). In support of his constitutional argument, petitioner relies mainly on three recent cases: United States v. Sisson, 297 F.Supp. 902 (D.Mass.1969); United States v. McFadden, 309 F.Supp. 502 (W.D.Calif.1970); and United States v. Bower, 307 F.Supp. 1094 (N.D.Calif.1969). I would note that these three opinions which support

the petitioner's position here were all rendered by District Courts, that two are from the same District (the Northern District of California) and, further, that in *Sisson,* which has been before the Supreme Court, the Supreme Court dismissed the appeal for lack of jurisdiction, declining to rule on the question of selective objection. 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970).

On the other hand, there are several recent Circuit Court decisions which have upheld this statute under a similar attack as here and have declined to recognize selective conscientious objection. These are Negre v. Larsen, 418 F.2d 908 (9th Cir. 1969) and United States v. Gillette, 420 F.2d 298 (2d Cir. 1970). The Supreme Court granted certiorari in both of these cases on June 29, 1970. 399 U.S. 925, 90 S.Ct. 2256, 90 S.Ct. 2236, 26 L.Ed.2d 792, 26 L.Ed.2d 791 (1970).

Another Circuit Court case is United States v. Curry, 410 F.2d 1297 (1st Cir. 1969). See also United States v. Spiro, 384 F.2d 159 (3d Cir. 1967); United States v. Kurki, 255 F.Supp. 161 (E.D. Wis.1966), affirmed 384 F.2d 905 (7th Cir. 1967); and United States v. Valentine, 288 F.Supp. 957, 987 (D.P.R.1968). All of these decisions would seem to be contrary to the position taken by the petitioner in this Court.

The *Negre* case is a Ninth Circuit case and presumably states the law of that Circuit. *McFadden* and *Bower,* both District Court decisions out of the same District in the Ninth Circuit, can hardly then be said to have much, if any, validity under these circumstances. I would further note that *Negre* specifically disapproved of *Sisson.* There is no Fourth Circuit case which has ruled on the constitutionality of the selective objection. However, the government has cited to the Court United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966), in which a Black Muslim had claimed the right to exemption as a conscientious objector because of alleged beliefs by his group that Muslims should not be forced to take part in wars conducted by the United States. The Court found his objections to be "entirely political" and upheld the defendant's conviction for refusing to submit to induction.

■ After reviewing these cases and after considering the briefs and arguments (and I might at this point note that these questions have been very extensively briefed as petitioner has filed a 108-page brief, and the government has filed the Solicitor General's brief submitted to the Supreme Court in the *Sisson* case as well as the *Negre* briefs and others), this Court concludes that this statute and Army regulation are constitutional and that petitioner's application was properly disapproved on the basis of the Regulation in question.

■ As background to the constitutional argument, it should be remembered that Congress's power to raise and maintain armies itself has a constitutional base, namely Article I, Section 8. This constitutional power is broad and sweeping, does not depend on the contemporaneous existence of a war and may be exercised in time of peace. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); United States v. Gillette, *supra,* 420 F.2d at page 299.

The history of conscientious objection in this country and the background of Section 6(j) was carefully traced by Mr. Justice Clark in United States v. Seeger, *supra,* 380 U.S. at pages 169–173, 85 S.Ct. 850, 13 L.Ed.2d 733. There can be no doubt that this grant of exemption exists because of Congressional enactment. In Hamilton v. Regents of University of Calif., 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934), the Supreme Court quoted with approval from United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), as follows (293 U.S. at page 264, 55 S.Ct. at page 205):

"The conscientious objector is relieved from the obligation to bear arms in obedience to no constitutional provision, express or implied; but because, and only because, it has accord-

ed with the policy of Congress thus to relieve him. * * * The privilege of the native-born conscientious objector to avoid bearing arms comes not from the Constitution but from the acts of Congress * * * [W]ar powers * * * include * * * the power, in the last extremity, to compel the armed service of any citizen in the land, without regard to his objections or his views in respect of the justice or morality of the particular war or of war in general."

In a concurring opinion, Mr. Justice Cardozo (joined by Justices Brandeis and Stone) said this (at page 268, 55 S.Ct. at page 206):

"Manifestly a different doctrine would carry us to lengths that have never yet been dreamed of. The conscientious objector, if his liberties were to be thus extended, might refuse to contribute taxes in furtherance of a war, whether for attack or for defense, or in furtherance of any other end condemned by his conscience as irreligious or immoral. The right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government."

Specifically, with reference to petitioner's arguments, I first find no violation of due process or equal protection of the law. When Congress granted an exemption to one conscientiously opposed to war in any form but denied it to one like Font opposed to a particular war, Congress could validly have drawn a rational distinction between these two classes of individuals. Perhaps the reasons for this Congressional decision which point up the validity of this distinction can be best summed up in the Report of the so-called Marshall Commission which studied the Selective Service laws several years ago and which opposed statutory recognition of a special status for the "selective" conscientious objector. See Report of National Advisory Commission on Selective Service entitled "In Pursuit of Equity. Who Serves When Not All Serve?" (1967), at pages 48 to 51. Concluding that the status of con-

scientious objection can properly be applied only to those who are opposed to all killing of human beings under all circumstances, the Commission stated (at page 50):

"It is one thing to deal in law with a person who believes he is responding to a moral imperative outside of himself when he opposed all killing. It is another to accord a special status to a person who believes there is a moral imperative which tells him he can kill under some circumstances and not kill under others."

Other points mentioned in the Report in support of the Commission's position are as follows:

"(1) So-called selective pacifism is essentially a political question of support or nonsupport of a war and cannot be judged in terms of special moral imperatives; such political opposition to a particular war is more properly expressed through recognized democratic processes and is entitled to no exemption from decisions reached through these processes; (2) Legal recognition of selective pacifism could open the doors to a general theory of selective disobedience to law, which could quickly tear down the fabric of government; the distinction is dim between a person conscientiously opposed to participation in a particular war and one conscientiously opposed to payment of a particular tax; (3) Allowing the selective pacifist to avoid combat service by performing noncombatant service in support of a law which he had theoretically concluded to be unjust is unjustifiable, and (4) Legal recognition of selective pacifism could be disruptive to the morale and effectiveness of the armed forces."

In United States v. Kauten, 133 F.2d 703 (2d Cir. 1943), Judge Augustus Hand noted the reasonableness of such a distinction as follows (at page 708):

"There is a distinction between a course of reasoning resulting in a conviction that a particular war is inexpedient or disastrous and a conscien-

tious objection to participation in any war under any circumstances. The latter, and not the former, may be the basis of exemption under the Act. The former is usually a political objection, while the latter, we think, may justly be regarded as a response of the individual to an inward mentor, call it conscience or God, that is for many persons at the present time the equivalent of what has always been thought a religious impulse."

Coming next to the argument that this statute violates the Establishment Clause of the First Amendment, I would refer at the outset to School District of Abington Township, Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), in which the Supreme Court formulated a basic test for determining the validity of a legislative provision under this clause, as follows (at page 222, 83 S.Ct. at page 1571):

"What are the purpose and primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution."

It is clear from the cases that the First Amendment does not say that in every and all respects there shall be a separation of church and state. See Zorach v. Clauson, 343 U.S. 306, 312, 72 S.Ct. 679, 96 L.Ed. 954 (1952). As Mr. Justice Brennan said, concurring in the *Schempp* case, 374 U.S. at page 295, 83 S.Ct. at page 1609 the Framers meant only to foreclose "those involvements of religious with secular institutions which (a) serve the essentially religious activities" (and I would underscore those words, "essentially religious activities") "of religious institutions; (b) employ the organs of government for essentially religious purposes; or (c) use essentially religious means to serve governmental ends, where secular means would suffice." See also this Court's opinion in Cornwell v. State Board of Education, 314 F.Supp. 340 (D.Md.1969), affirmed per curiam, 428 F.2d 471 (4th Cir. 1970).

Applying this test, it is apparent to me that there is no violation of the Establishment Clause here. There here is no inhibition of essentially religious activities or institutions. Nor is there a preference of one religion over another. The statute applies to all religions equally and likewise applies under *Seeger* and *Welsh* to those who profess similar selective convictions not of religious origin. It is difficult to understand under such circumstances how the statute establishes a particular religion or prefers one over another.

Finally, it is argued that this statute is contrary to the Free Exercise Clause of the First Amendment because it infringes upon petitioner's freedom of religion. But the record here does not establish that the belief that the Vietnam war is unjust and immoral is a basic tenet of the Methodist Church and as such the exercise of religion by petitioner when accepted by him. Indeed, the testimony before the Hearing Examiner by Dr. Swomley was that the Methodist Church had asked that those who objected to participation in a specific war be exempted and that it had also asked that those who objected to all war likewise be exempted. Methodists then have both beliefs; some Methodists are universal conscientious objectors while others are selective. Methodism approves many different approaches to current issues, and Dr. Swomley, who is a Methodist minister and Professor of Theology, testified at the hearing as follows (at page 32 of the transcript of the hearing before the O-3 Officer):

"I could read into the record the resolution of the General Board of Christian Social Concerns of the Methodist Church. United Methodist teaching, while supporting conscientious objection to all wars as an ethically valid position, has also asserted that ethical decisions on political matters are to be made in the context of the competing claims of civil law, biblical revelation, church doctrine, the end and means that relate to peace, justice, freedom and one's own understanding

of what God calls him to do. This may lead devoted Christians into different courses of action."

Can it reasonably be said that any approach taken by an individual within the broad confines of this doctrine amounts to the exercise of his religion? Methodism, like many other religious denominations and like many thoughtful American citizens, supports the position that the Vietnam War is immoral. But it can hardly be said that the mere fact that a religious denomination permits or even supports a position (based on grounds of morality) on a current political or social question makes that position *ipso facto* a part of the exercise of that particular religion.

If this were so, and if petitioner's argument were followed to a logical extreme, then exemption from the Armed Forces would have to be granted for numerous reasons, and not necessarily because of opposition to a particular war or any war at all, but even because of opposition to means used by the Armed Forces. Various church bodies have opposed napalm, nuclear weapons, and chemical warfare. If petitioner's position is a valid one, a person could claim conscientious objector status because his religious beliefs (or ethical or moral beliefs under *Welsh*) would not permit him to use such weapons or devices. Beyond that, exemption from taxes used to support a war or for the purchase of objectionable weapons could be successfully asserted. The Courts have never accepted such arguments.

In the *Sisson* case, Judge Wyzanski held that a balancing approach should be taken by the courts to sort out the contents of such a Pandora's box, and claimed that courts can properly make such decisions. However, most conscientious objector cases are decided by Selective Service Boards (for new registrants) or Armed Services officers (for those already in the service). The soundness of the present Congressional policy is underscored by the fact that persons who have not been legally trained would be making these fine distinctions

as to essentially political and social questions, if the *Sisson* rule were to become law everywhere. To my knowledge, no appellate court has adopted this novel approach taken by *Sisson*, nor have any District Courts except in the Northern District of California.

For these reasons, I find no violation by this statute of the free exercise of petitioner's religion.

One final word is in order. The power of Congress to raise and maintain an Army and grant exemptions is broad and has up until recent times seldom been questioned. Today, because of an unpopular war in Southeast Asia that is opposed by many for reasons that have considerable force, arguments are advanced that this Congressional power is circumscribed by the Constitution. Only a few courts, acting in this climate, have found such limitations on Congress's power. But the issue is not whether a court is or is not opposed to the Vietnam war. The question is whether Congress could constitutionally grant the exemption in the terms that it did. This Court holds that the statute and the Regulation are both constitutional and that the Army properly denied petitioner's claim for a discharge as a conscientious objector because he is a selective objector.

The petition is accordingly denied.