LOUIS P. FONT, First Lieutenant,
U. S. Army, Petitioner,

v

JONATHAN O. SEAMAN, Lieutenant General, Commanding General, Fort George G. Meade, Maryland; ARNOLD W. ALEXANDER, Colonel, Post Commander, Fort George G. Meade, Maryland; MELVIN LAIRD, The Secretary of Defense; and STANLEY R. RESOR, The Secretary of the Army, Respondents

20 USCMA 387, 43 CMR 227

Miscellaneous Docket No. 71–6

March 2, 1971

*Marvin M. Karpatkin, Esquire, Mrs. Rhoda Hendrick Karpatkin, Michael N. Pollet, Esquire,* and *Melvin L. Wulf, Esquire,* counsel for Petitioner.

## Memorandum Opinion of the Court

This "Petition for Writ of Habeas Corpus or Other Extraordinary Relief Pursuant to 28 USC § 1651" is submitted by First Lieutenant Louis P. Font, an officer in the United States Army, assigned to duty at Fort George G. Meade, Maryland, hereinafter referred to as the petitioner.

Petitioner relies upon the following allegations as the basis for the relief requested:

On February 27, 1970, he submitted an application for discharge as a conscientious objector pursuant to Army Regulation 635–20, predicated upon his conclusion "that because of his religious training and beliefs he was conscientiously opposed to participation in the Vietnam War in any form." The Secretary of the Army denied the application, and the United States District Court for the District of Maryland denied his petition for habeas corpus in which he sought to contest the Secretary's action. Font v Laird, 318 F Supp 891 (1970).

Upon his reassignment to Fort Meade pending disposition of his appeal from the District Court's decision, he was directed to conduct a survey of all temporary barracks, making weekly reports of his inspections to the Chief, Plans and Operations Division. In compliance with that order, petitioner avers that he has submitted five reports indicating "poor housing conditions in the enlisted men's barracks at Fort Meade," and specifying the particulars of these conditions. Shortly after the submission of his second report, the Baltimore News American published an article describing petitioner's findings with respect to the inspected barracks, and quoting petitioner's views on these conditions, on the wide disparity between officers and enlisted men, and on the war in Vietnam. Having received no response to

388

any of his reports on housing conditions from respondent, Lieutenant General Seaman, Commanding General, First United States Army, petitioner declares that he then further detailed the irregularities he had observed in the execution of assigned duties to a reporter for the Maryland Gazette, at the latter's request. This interview was described at length in a subsequent edition of the Gazette. The refutation of these allegations submitted to that newspaper by respondent, Colonel Alexander, the Post Commander, was also published.

As a result of these publications, on January 6, 1971, Colonel Alexander gave petitioner a verbal order prohibiting release of information coming to his attention in the course of his assigned duties without the prior approval of the Public Information Officer. A further order prohibited him from entering barracks or other buildings belonging to another Command not in the execution of his duties, without appropriate command permission or invitation. At petitioner's request, the orders were confirmed in a writing setting forth in detail the considerations which prompted their issuance.

On January 7, 1971, petitioner sought rescission of the orders in a complaint filed, he states, pursuant to Article 138, Uniform Code of Military Justice, 10 USC § 938. Redress was not forthcoming.

Petitioner also describes his public activities, in concert with other officers, designed to persuade the Secretary of the Army to convene a court of inquiry to investigate the involvement of certain commanders in war crimes. In this connection, petitioner states that he publicly announced that "the list of possible war criminals should include Major General Samuel W. Koster, Assistant to the Commanding General of the First United States Army, and Lieutenant General Jonathan O. Seaman."

On January 18, 1971, he submitted to his commanding officer a 106-page report of barracks conditions, and on January 21, 1971, he entered First Army Headquarters for the purpose of delivering copies of that report to Generals Seaman, Ciccolella and Koster. While in the visiting room, General Ciccolella asked him to explain his presence there. Petitioner did so, but was ordered, in angry tones, to leave. He further declares he was assaulted by General Ciccolella on that occasion. At the latter's direction he was removed by military policemen and confined under guard for four hours. After his release, Colonel Alexander restricted him to quarters and to his place of duty during duty hours pending investigation of alleged misconduct. The order provided for his attendance at any on-post place of worship of his selection, mess, and medical treatment. This restriction is still in effect, and petitioner's "various requests to exercise his constitutionally guaranteed liberties of speech, assembly, association, press and petition" have been denied. Following are his stated reasons for the various requests submitted:

"(a) To meet with members of the Concerned Officers Movement;

"(b) To go to the Baltimore Museum;

"(c) To attend a meeting of the Washington Area Peace Action Coalition at the Old [sic] Souls Church in Washington, D. C.;

"(d) To speak with Mr. Donald Duncan of the GI Office in Washington, D. C.;

"(e) To eat at the G. I. Coffee House in Washington, D.C.;

"(f) To meet with his various counsel and the press;

"(g) To visit the library of Adjutant General's Office to study Army regulations pertinent to his case;

"(h) To go to Friendship Airport for purposes of meeting a lady friend who was visiting him and to escort her from the airport."

On January 25th, petitioner preferred charges against Colonel Alex-

ander alleging dereliction of duty by failing to maintain habitable living conditions in the barracks at Fort Meade, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. The petition does not disclose the action taken on the charges.

On January 28, 1971, Colonel Alexander gave him written notice that five specifications of willful disobedience of the lawful orders of superior officers had been preferred against him. These specifications allege two separate violations of Colonel Alexander's orders of January 6, 1971, two separate violations of orders of Major General Ciccolella, and a single violation of an order of one Colonel Hamblin.

At present, these charges are under investigation pursuant to the provisions of Article 32, Uniform Code, supra, 10 USC § 832.

Petitioner contends that the orders of Colonel Alexander, issued on January 6, 1971, as above described, violate constitutionally guaranteed rights of freedom of speech, assembly, press, association and of petition; that they were issued for the sole purpose of punishing petitioner for exercising those rights, rather than for any lawful purpose or military need. He further contends that insofar as the order restricting access to the press without prior approval of military authorities purports to be based on Army Regulation 360–5, such regulation is unconstitutional as applied to petitioner. Thus, concludes the petitioner, all court-martial proceedings and any other disciplinary measures commenced by respondents should be enjoined.

Additionally, he argues, the restriction imposed upon him pending the investigation of the outstanding charges is unlawful, as violative of due process, in that he "is not being confined in accordance with Article 13 of the Uniform Code of Military Justice or paragraph 20(b) of the Manual for Courts-Martial." Rather, the restriction was imposed solely as punishment for his exercise of constitutionally guaranteed rights, and in order to prevent the further exercise of such

rights. Finally, he declares, that insofar as the restriction is predicated upon Article 13, supra (10 USC § 813), and paragraph 20b, Manual for Courts-Martial, United States, 1969 (Revised edition), their provisions, as applied to him, are unconstitutional. Therefore, petitioner concludes, the order of restriction should be vacated.

Title 28, United States Code, section 1651(a), provides:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

That this Court is a court established by Act of Congress within the meaning of the foregoing enactment is now well established. Noyd v Bond, 395 US 683, 23 L Ed 2d 631, 89 S Ct 1876 (1969); United States v Frischholz, 17 USCMA 150, 36 CMR 306 (1966). The authority conferred by the Act, however, is not unlimited. Rather, it permits this Court to intervene in court-martial proceedings which may be subject to our review under Article 67(b), Uniform Code, supra, 10 USC § 867(b). Such action may be taken only "in aid of our jurisdiction," that is, when necessary or appropriate to preserve the exercise of possible future jurisdiction in the normal course of appellate review. United States v Snyder, 18 USCMA 480, 40 CMR 192 (1969). Since the action contemplated is extraordinary in nature, the conditions warranting resort to the remedies there provided for must also be extraordinary. A petitioner seeking relief in such a proceeding is required to demonstrate that the ordinary course of the proceedings against him through trial and appellate channels is not adequate. Hallinan v Lamont, 18 USCMA 652 (1968).

In the instant case, restriction to certain specified limits is the least severe form of restraint available to a commander who believes some restraint must be placed upon the lib-

390

erties of one awaiting disposition of charges. Paragraph 20*b,* Manual for Courts-Martial, supra. Should the individual upon whom such restraint is imposed believe it is in any way improper, a readily available means of redress is provided for. See Article 138, Uniform Code, supra, 10 USC § 938. No application has been submitted by petitioner to the appropriate authority pursuant to that Article. Moreover, should such restraint result in a denial of the right to consult with counsel, or limit petitioner's ability to prepare for trial, relief is obtainable by appropriate motions submitted to the military judge, if and when the charges are referred to a court-martial for trial. Article 39(a), Uniform Code, supra, 10 USC § 839(a). Hallinan v Lamont, supra. All questions thereby determined may then be reviewed in the normal course of appellate review, including those which petitioner has herein labeled as of constitutional dimensions.

The same considerations govern our disposition of petitioner's contentions respecting the legality of the orders which he allegedly disobeyed.

It appearing that petitioner has not set forth facts sufficient to warrant the relief he seeks, the petition is dismissed.