Jacob DENEDO, Mess Management Specialist Second Class
U.S. Navy, Appellant

v.

United States, Appellee

Misc. No. 07-8012

Crim. App. No. 99-00680

United States Court of Appeals for the Armed Forces

Argued October 1, 2007

Decided March 11, 2008

EFFRON, C.J., delivered the opinion of the Court, in which Baker
and Erdmann, JJ., joined.  Stucky and Ryan, JJ., each filed a
dissenting opinion.


Counsel


For Appellant:  Matthew S. Freedus, Esq. (argued); Eugene R.
Fidell, Esq., Brent C. Harvey, Esq., and Lieutenant Brian L.
Mizer, JAGC, USN (on brief).

For Appellee:  Lieutenant Commander Paul D. Bunge, JAGC, USN
(argued); Commander Paul C. LeBlanc, JAGC, USN (on brief); Major
Brian K. Keller, USMC.

Amicus Curiae for Appellant:  Donald G. Rehkopf Jr., Esq. (on
brief) -- The National Association of Criminal Defense Lawyers.

Military Judge:  Gerald E. Champagne


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**

Chief Judge EFFRON delivered the opinion of the Court.

Appellant filed a petition for extraordinary relief with the United States Navy-Marine Corps Court of Criminal Appeals. The court considered his petition and denied relief. Denedo v. United States, No. NMCCA 9900680 (N-M. Ct. Crim. App. Mar. 26, 2007). Appellant then filed the present appeal.

For a writ appeal, we consider the record developed at trial and on direct appeal. We also consider the materials filed by the parties in the course of the writ proceedings at the Court of Criminal Appeals and the appeal to our Court. Based on the foregoing, we consider whether a decision on the writ appeal can be reached on the record before us, or whether a more fully developed factual record is required prior to reaching a decision on the merits. See Section III.C.2., infra.

The Government contends that the Court of Criminal Appeals erred by not dismissing the petition on jurisdictional grounds, while Appellant contends that the court erred by not granting relief. Appellant challenges his court-martial conviction, asserting that his plea was not knowing or voluntary. Appellant contends that he expressly requested guidance of counsel on the immigration impact of his plea, that the advice provided by his attorney was defective, and that he relied upon ineffective assistance of counsel to his detriment in pleading guilty. He further asserts that the defect in counsel's advice was not

2

known to him and could not have been known to him until eight years after conviction when the United States Citizenship and Immigration Services (USCIS) first sought to deport him based on his court-martial conviction.  Although judicial review of immigration proceedings, including any use therein of a court-martial conviction, is outside the jurisdiction of this Court, the providence of a guilty plea at a court-martial is subject to our review.  See Section III.B., infra.

For the reasons set forth below, we conclude that the Court of Criminal Appeals properly rejected the Government's motion to dismiss.  We further conclude that a more fully developed record is required prior to reaching a decision on the merits, and we remand the case for further consideration by the Court of Criminal Appeals.

Section I of this opinion outlines the procedural history of the present case.  Section II discusses collateral review under the All Writs Act.  Section III addresses Appellant's request for relief.

## I.  PROCEDURAL HISTORY

Appellant, who was born in Nigeria, came to the United States in 1984.  He enlisted in the Navy in 1989 and became a lawful permanent resident in 1990.

Denedo v. United States, No. 07-8012/NA

    In 1998, the Government charged Appellant with conspiracy, larceny, and forgery, alleging that he assisted a civilian acquaintance in defrauding a community college.  See Articles 81, 121, 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921, 923 (2000).  Appellant, who was represented by civilian counsel and detailed military counsel, entered into a pretrial agreement with the convening authority.   In exchange for Appellant's agreement to enter a guilty plea, the convening authority agreed to reduce the charges.  The convening authority also agreed to refer the case to a special court-martial, which, at that time, could not impose a sentence of confinement in excess of six months.  See Article 19, UCMJ, 10 U.S.C. § 819 (1994), amended by National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, § 577, 113 Stat. 512, 625 (1999) (prospectively providing a twelve-month maximum for periods of confinement adjudged by special courts-martial).

    Pursuant to the pretrial agreement, Appellant entered a plea of guilty at a special court-martial composed of a military judge sitting alone.  In accordance with applicable law, the military judge conducted an inquiry into the providence of the plea.  See Article 45, UCMJ, 10 U.S.C. § 845 (2000); Rule for Courts-Martial (R.C.M.) 910; United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).  After conducting the inquiry, the military judge concluded that the plea was provident.  The

4

military judge entered findings of guilty for the charges of conspiracy and larceny, as limited by the pretrial agreement. The record contains no reference to the subject of the deportation consequences of the pleas.  Following the entry of findings, the military judge conducted a sentencing proceeding. On July 15, 1998, the military judge imposed a sentence that included three months confinement, reduction to grade E-1, and a bad-conduct discharge.  The convening authority approved the sentence on March 7, 1999.  The Navy-Marine Corps Court of Criminal Appeals affirmed on February 24, 2000.  United States v. Denedo, No. NMCA 99-00680 (N-M. Ct. Crim. App. Feb. 24, 2000).  Appellant did not seek further review in our Court.  The Navy discharged Appellant on May 30, 2000.

On October 30, 2006, the Government, through USCIS, initiated proceedings to deport Appellant, citing his 1998 special court-martial conviction.[1]  Subsequently, Appellant filed a petition for extraordinary relief with the Navy-Marine Corps Court of Criminal Appeals, requesting collateral review of his court-martial for alleged ineffective assistance of counsel and issuance of a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a) (2000).  Appellant's petition alleged that

---

[1] During the present writ appeal, USCIS filed an additional deportation charge, also based upon Appellant's special court-martial conviction.

5

he specifically told his counsel during plea negotiations that "his primary concern and objective" was "to avoid the risk of deportation," and that he was "far more concerned about deportation and being separated from his family, than the risk of going to jail." According to Appellant's petition, his counsel had assured him that "if he agreed to plead guilty at a special-court-martial he would avoid any risk of deportation."

At the Court of Criminal Appeals, the Government filed a motion to dismiss on the grounds that the court lacked jurisdiction to consider the writ. The Court of Criminal Appeals denied the Government's motion to dismiss. Denedo, No. NMCCA 9900680. The court also considered and denied Appellant's petition for extraordinary relief in a summary decision. Id.

Appellant filed a writ appeal with this Court. The Government, in response, reiterated its jurisdictional objection. In addition, the Government contended that Appellant had been provided with the effective assistance of counsel at his court-martial.

## II. COLLATERAL REVIEW

### A. BACKGROUND

In a court-martial of the type at issue in the present case, the findings and sentence approved by the convening authority are subject to direct review by the Court of Criminal

Appeals of the military department concerned.  Article 66(b),
UCMJ, 10 U.S.C. § 866(b) (2000); cf. Article 69, UCMJ, 10 U.S.C.
§ 869 (2000) (providing for review of other courts-martial in
the Office of the Judge Advocate General).  In addition to
issues of law, the scope of review at the Court of Criminal
Appeals extends to factual sufficiency and sentence
appropriateness.  See Article 66(c), UCMJ.  The decisions of the
Court of Criminal Appeals are subject to direct review in this
Court on issues of law.  Article 67(a), (c), UCMJ, 10 U.S.C. §
867(a), (c) (2000).  Cases in which we have granted review or
have otherwise provided relief are subject to direct review in
the Supreme Court by writ of certiorari.  Article 67a, UCMJ, 10
U.S.C. § 867a (2000); 28 U.S.C. § 1259 (2000).

A judgment as to the legality of the proceedings becomes
final upon the completion of direct review by the Court of
Criminal Appeals and (1) expiration of the time for filing a
petition for review with this Court without such a filing (and
without the case otherwise being under review at this Court);
(2) rejection of a petition for review by this Court; or (3)
completion of review by this Court, subject to requirements
regarding potential review by the Supreme Court.  Article
71(c)(1), UCMJ, 10 U.S.C. § 871(c)(1) (2000).  In addition,
various forms of executive action are required before the
results of a court-martial become final.  See Article 71(a),

(b), (c)(2), UCMJ.  Once such action is taken, Article 76, UCMJ, 10 U.S.C. § 876 (2000), provides, in pertinent part, that "[o]rders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States," subject to certain explicit exceptions.

The results of courts-martial are subject to collateral review by courts outside the military justice system.  See, e.g., Burns v. Wilson, 346 U.S. 137 (1953) (plurality opinion) (habeas corpus in Article III courts); Schlesinger v. Councilman, 420 U.S. 738, 751 (1975) (noting that various forms of collateral review historically have been available for courts-martial convictions); United States ex rel. New v. Rumsfeld, 448 F.3d 403, 406 (D.C. Cir. 2006 (federal question under 28 U.S.C. § 1331); Matias v. United States, 923 F.2d 821, 823, 825 (Fed. Cir. 1990) (back pay litigation under the Tucker Act, 28 U.S.C. § 1491).  Courts-martial also are subject to collateral review within the military justice system.  See, e.g., Loving v. United States, 62 M.J. 235, 246 (C.A.A.F. 2005); cf. Schlesinger, 420 U.S. at 753 n.26 (describing collateral review by extraordinary writs in the military justice system).

Appellant has requested collateral review under the All Writs Act, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of

their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Act requires two separate determinations:  first, whether the requested writ is "in aid of" a court's jurisdiction; and second, whether the requested writ is "necessary or appropriate."

### B.   COLLATERAL REVIEW IN AID OF THE JURISDICTION OF THE COURTS OF CRIMINAL APPEALS

As the Supreme Court observed in Clinton v. Goldsmith, 526 U.S. 529, 534-35 (1999), "although military appellate courts are among those empowered to issue extraordinary writs under the Act," the Act confines a court to issuance of process in aid of "its existing statutory jurisdiction" and "does not enlarge that jurisdiction."  The Supreme Court noted that this Court "is not given authority, by the All Writs Act or otherwise, to oversee all matters arguably related to military justice, or to act as a plenary administrator even of criminal judgments it has affirmed."  Id. at 536.  The Court added that "there is no source of continuing jurisdiction for the CAAF over all actions administering sentences that the CAAF at one time had the power to review."  Id.

When courts within the military justice system lack subject matter jurisdiction over an action, such as an administrative separation, they cannot invoke the All Writs Act to enlarge their jurisdiction to review the administrative action, even if

9

it is based upon the results of a court-martial. Id. (noting that "Goldsmith's court-martial sentence has not been changed; another military agency has simply taken independent action"). However, when a petitioner seeks collateral relief to modify an action that was taken within the subject matter jurisdiction of the military justice system, such as the findings or sentence of a court-martial, a writ that is necessary or appropriate may be issued under the All Writs Act "in aid of" the court's existing jurisdiction. Loving, 62 M.J. at 245-46 (citing 28 U.S.C. § 1651(a), and Goldsmith, 526 U.S. at 534).

The existing statutory jurisdiction of the Navy-Marine Corps Court of Criminal Appeals includes cases such as Appellant's, in which the sentence extends to a punitive discharge. Article 66(b), UCMJ. On direct appeal, the Court of Criminal Appeals conducts a de novo review of the findings and sentence approved by the convening authority. Article 66(c), UCMJ (providing for review of matters of fact and law, as well as sentence appropriateness). Appellant's request for coram nobis relief is limited to the findings and sentence of the court-martial reviewed by the Court of Criminal Appeals. He has raised a claim -- ineffective assistance of counsel -- that goes directly to the validity and integrity of the judgment rendered and affirmed. As such, the petition was "in aid of" the existing jurisdiction of the Court of Criminal Appeals.

### C.  ARTICLE 76 AND COLLATERAL REVIEW

As noted in Section II.A., supra, Article 76 addresses the completion of direct review, including executive action. Article 76 provides in pertinent part:

> The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive.  Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 874 of this title (article 74), and the authority of the President.

In Schlesinger, 420 U.S. at 745, the Supreme Court emphasized that Article 76 provides a prudential constraint on collateral review, not a jurisdictional limitation.  Article 76 "does not expressly effect any change in the subject-matter jurisdiction of Article III courts."  Id. at 749.  The Article "only defines the point at which military court judgments become final and requires that they be given res judicata effect."  Id.

Similar considerations apply to the application of Article 76 within the military justice system.  Although Schlesinger involved a collateral challenge to a pending court-martial in an Article III court, the Supreme Court's analysis of the

11

relationship between Article 76 and collateral review specifically cited a post-Article 76 coram nobis case reviewed by this Court.  See Schlesinger, 420 U.S. at 753 n. 26 (quoting United States v. Frischholz, 16 C.M.A. 150, 151, 36 C.M.R. 306, 307 (1966)); see also Noyd v. Bond, 395 U.S. 683, 695 n.7 (1969) (observing that this Court in Frischholz "properly rejected" the government's argument that this Court lacked power to grant writs under the All Writs Act); cf. Goldsmith, 526 U.S. at 537 n.11 (referring to the discussion in Noyd, 395 U.S. at 693-99, of the various avenues of relief available within the military justice system).  In terms of timing, Article 76 serves as a prudential restraint on collateral review of courts-martial pending completion of direct review.  When a coram nobis petition is considered after completion of direct review, finality of direct review enhances rather than diminishes consideration of a request for collateral relief.  See, e.g., United States v. Morgan, 346 U.S. 502, 511-12 (1954); see Section III, infra.  In terms of the scope of collateral review, the res judicata effect of Article 76 means that the decision on direct review will stand as final unless it fails to pass muster under the highly constrained standards applicable to review of final judgments, as discussed in the following sections.

D.  THE AVAILABILITY OF OTHER REMEDIES AS A
LIMITATION ON RELIEF UNDER THE ALL WRITS ACT

Because the All Writs Act serves as a residual authority, a writ is not "necessary or appropriate" under the statute if another adequate legal remedy is available.  See Loving, 62 M.J at 247, 253-54 (discussing Carlisle v. United States, 517 U.S. 416 (1996)).  The determination of whether another remedy is adequate requires a contextual analysis.  The possibility of executive clemency, for example, does not provide an adequate remedy because the exercise of clemency powers does not ensure judicial review of legal issues.  See id. at 247.  Likewise, a motion for a new trial is not a remedy if the request for extraordinary relief is based on developments occurring after the two-year deadline in Article 74, UCMJ, 10 U.S.C. § 874 (2000).

In view of the potential for collateral review by courts outside the military justice system, see Section II.A., supra, the question arises as to whether the availability of such review renders review of a coram nobis petition by the Court of Criminal Appeals unnecessary or inappropriate.  In Loving, we observed that Article III courts would be unlikely to exercise jurisdiction over petitions for extraordinary relief during the period between completion of final legal review under Article 71(c) and finality of proceedings on direct review under Article

13

76 because of doctrines such as exhaustion and abstention, reflecting the primary role of courts within the military justice system in reviewing challenges to courts-martial.  62 M.J. at 248-51.  In that context, we concluded that review was available under the All Writs Act to consider a court-martial conviction and sentence that was challenged during the period between completion of final legal review under Article 71(c) and the completion of final review, including executive actions, under Article 76.  Id. at 256.  In the present case, we consider the relationship between extraordinary writ proceedings within the military justice system and the possibility of Article III collateral review in a post-Article 76 setting, a matter that we did not address in Loving.  See id. at 245 n.61.

1.  Constraints on collateral review by courts outside the
    military justice system

    The power of courts outside the military justice system to engage in post-Article 76 collateral review is subject to constraints on the exercise of that power.  See Loving, 62 M.J. at 248-49.  A prominent theme running through the Supreme Court's consideration of military justice cases on collateral review is that the system of courts established by Congress for the military justice system should serve as the primary mechanism for review of court-martial cases, and that the courts within the military justice system should have an opportunity to

consider challenges to court-martial proceedings prior to review by courts outside the military system.  This theme is reflected in the Supreme Court's emphasis on exhaustion of military remedies, as well as the Court's focus on full and fair consideration by the courts within the military justice system.

a.  Exhaustion of remedies

Under the exhaustion of remedies doctrine, courts outside the military justice system normally refrain from collateral review of courts-martial until all available military remedies are exhausted.  The doctrine reflects the Supreme Court's view of the pivotal role assigned by Congress to the courts in the military justice system.  As the Court stated in Schlesinger, Congress enacted the UCMJ under its power to regulate the armed forces in an effort "to balance . . . military necessities against the equally significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted."  420 U.S. at 757-58.  To address those competing interests, "Congress created an integrated system of military courts and review procedures."  Id. at 758.

The Supreme Court further observed that "implicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task."  Id.  Underscoring the need for

15

other courts to refrain from review until all military remedies have been exhausted, the Court stated "[w]e think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate servicemen's constitutional rights."  Id.

As a general matter, courts outside the military justice system "will not entertain habeas petitions by military prisoners until all available military remedies have been exhausted."  Id.  The exhaustion requirement is prudential rather than jurisdictional, and the Supreme Court did not preclude the possibility that the circumstances of a particular case might warrant consideration of a habeas petition by an Article III court prior to exhaustion.  Id. at 761.

b.  Full and fair consideration

Even when remedies have been exhausted, the scope of collateral review outside the military justice system is constrained by the requirement to consider whether the military justice system has given full and fair consideration to the claims at issue.  Burns, 346 U.S. at 142-46.  De novo review is appropriate only if the military justice system "manifestly refused to consider those claims."  Id. at 142.  As recently noted by the United States Court of Appeals for the District of Columbia Circuit in New, 448 F.3d at 407-08, Article III courts have utilized various standards in applying Burns.  Compare,

16

e.g., Dodson v. Zelez, 917 F.2d 1250, 1252-53 (10th Cir. 1990) (applying the deference test articulated by the United States Court of Appeals for the Fifth Circuit in Calley v. Callaway, 519 F.2d 184 (5th Cir. 1975)), with Brosius v. Warden, 278 F.3d 239, 245 (3d Cir. 2002) (applying the deference standard that the court would have used in habeas review of a state court conviction under 28 U.S.C. § 2254(d)).  Irrespective of the different approaches used by the Article III courts, they are obligated to apply the exhaustion and review standards of Schlesinger and Burns when considering claims raised by a petitioner on collateral review.

2.  The relationship between courts within and outside the military justice system with respect to collateral review

As previously described, courts within the military justice system conduct extraordinary writ review of courts-martial at a variety of stages, including after completion of direct review under Article 76.  Although not prohibited from undertaking collateral review at the post-Article 76 stage without considering the availability of relief within the military justice system, a number of Article III courts have deferred action because of, or otherwise have taken into account, the availability of post-Article 76 collateral review within the military justice system.

In Frischholz, 16 C.M.A. at 151, 36 C.M.R. at 307, the petitioner's conviction became final under Article 76 after we denied his petition for direct review and he was dismissed from the Air Force. Five years later, he sought collateral relief from the United States District Court for the District of Columbia. Id. at 151, 36 C.M.R. at 307. The district court dismissed the petition, indicating that he should first seek review on the merits from this Court, a suggestion apparently initiated by the government. See id. at 151, 36 C.M.R. at 307.

When Frischholz followed the district court's suggestion and filed a petition for a writ of error coram nobis with this Court, the government changed its position, contending that the case was outside this Court's statutory jurisdiction under Article 67, and that we could not review a case after it became final under Article 76, UCMJ. See id. at 151, 36 C.M.R. at 307. We rejected the government's position, concluding that we had jurisdiction to review the case under the All Writs Act, and we denied the application for relief on its merits. Id. at 152-53, 36 C.M.R. at 308-09.

The Supreme Court subsequently cited with approval the conclusion in Frischholz that Article 76 does not bar "subsequent attack in an appropriate forum" and that "[a]t best it provides finality only as to interpretations of military law" by this Court. See Schlesinger, 420 U.S. at 753 n. 26 (quoting

Frischholz, 16 C.M.A. at 151, 36 C.M.R. at 307); see also Noyd, 395 U.S. at 695 n.7 (citing Frischholz as an example of the availability of review by this Court under the All Writs Act).

In Del Prado v. United States, 23 C.M.A. 132, 133-34, 48 C.M.R. 748, 749-50 (1974) (collateral review where petitioner was not in confinement), and Garrett v. Lowe, 39 M.J. 293, 294 (C.M.A. 1994) (collateral review where petitioner was in confinement), petitioners first sought relief in federal district court after their cases had become final under Article 76. In each case, the district courts withheld action pending collateral review in this Court, and in both cases we undertook review and granted relief. Del Prado, 23 C.M.A. at 134, 48 C.M.R. at 750; Garrett, 39 M.J. at 297.

More recently, a number of federal district courts have continued to rely upon the availability of collateral review in the military justice system to dispose of petitions seeking collateral relief. See, e.g., Tatum v. United States, No. RDB-06-2307, 2007 U.S. Dist. LEXIS 61947, at *12-*13, 2007 WL 2316275, at *6-*7 (D. Md. Aug. 7, 2007) (dismissing a request for post-Article 76 collateral relief on the grounds that the petitioner had not sought a writ of error coram nobis before this Court); Fricke v. Sec'y of the Navy, No. 03-3412-RDR, 2006 U.S. Dist. LEXIS 36548, at *9-*11, 2006 WL 1580979, at *3-*5 (D. Kan. June 5, 2006) (relying on this Court's summary disposition

of petitioner's post-Article 76 request for coram nobis relief);
MacLean v. United States, No 02-CV-2250-K (AJB), 2003 U.S. Dist.
LEXIS 27219, at *13-*15 (S.D. Cal. June 6, 2003) (dismissing a
petition for coram nobis relief for lack of jurisdiction and
noting the availability of such relief before the Court of
Criminal Appeals); Parker v. Tillery, 1998 U.S. Dist. LEXIS
8399, at *3-*5, 1998 WL 295574, at *2 (D. Kan. May 22, 1998)
(post-Article 76 coram nobis review in the military justice
system demonstrated full and fair review of claim).

The foregoing cases illustrate the care taken by Article
III courts to ensure that an issue has been considered by the
courts within the military justice system established by
Congress prior to outside collateral review.  These cases
reflect the Supreme Court's recognition that the military is an
institution with distinct traditions and disciplinary concerns,
and that Congress has given the military justice system a
particular role to play in the maintenance of the traditions and
discipline essential to the national defense, as balanced
against the individual rights of servicemembers.  See Section
II.D.1., supra.  Particularly where a collateral challenge
requires interpretation of the UCMJ, the Manual for Courts-
Martial, or military law precedents, courts outside the military
justice system have endeavored to ensure that an issue has

received full and fair consideration by courts within the military justice system before undertaking their own review.

3.  Requirement to bring a coram nobis petition before the court that rendered the judgment

The likelihood that outside courts will defer taking action on a coram nobis petition pending consideration within the military justice system is increased by the well-recognized principle that a writ of error coram nobis should be brought before the court that rendered the judgment.  See Loving, 62 M.J. at 251 (citing Steven J. Mulroy, The Safety Net:  Applying Coram Nobis Law to Prevent the Execution of the Innocent, 11 Va. J. Soc. Pol'y & L. 1, 9 (2003); 2 Steven Childress & Martha Davis, Federal Standards of Review, § 13.01, at 13-4 (3d ed. 1999)).  This requirement reflects the importance of providing the court that made the decision with the opportunity to consider any subsequent developments and to correct any resulting error in its original judgment.  See, e.g., Lowery v. McCaughtry, 954 F.2d 422, 422-23 (7th Cir. 1992) (discussing the rationale underlying the principle and noting that "[c]oram nobis arose as a device to extend the period . . . in which the judge who rendered a decision could reexamine his handiwork").  Many courts have disposed of writs of error coram nobis on this basis.  See id. (noting that counsel in that case "conceded that she had not found even one decision in the history of the United

States using coram nobis to set aside a judgment rendered by another court"); see also United States v. Sawyer, 239 F.3d 31, 37 (1st Cir. 2001); Sinclair v. Louisiana, 679 F.2d 513, 514-15 (5th Cir. 1982); Mustain v. Pearson, 592 F.2d 1018, 1021 (8th Cir. 1979); MacLean, 2003 U.S. Dist. LEXIS 27219, at *15; Carter v. Attorney General of the United States, 782 F.2d 138, 141 (10th Cir. 1986).

In the military justice system, the trial court -- the court-martial -- does not have independent jurisdiction over a case after the military judge authenticates the record and the convening authority forwards the record after taking action. See R.C.M. 1102(d); R.C.M. 1107(f)(2); United States v. DuBay, 17 C.M.A. 147, 149, 37 C.M.R. 411, 412 (1967). Because the trial court is not available for collateral review under the UCMJ or the Manual for Courts-Martial, collateral review within the military justice system does not occur at the trial court level. See United States v. Murphy, 50 M.J. 4, 5-6 (C.A.A.F. 1998).[2]

---

[2] Several Article III courts, citing Murphy, have noted the unavailability of collateral review at the trial court as a reason for concluding that court-martial convictions may not be reviewed under 28 U.S.C. § 2255 (providing for collateral review by "the court which imposed the sentence"). Witham v. United States, 355 F.3d 501, 505 (6th Cir. 2004); Gilliam v. Bureau of Prisons, No. 99-1222, 2000 U.S. App. LEXIS 3684, at *3, 2000 WL 268491, at *1 (8th Cir. Mar. 3, 2000) (unpublished); see Loving, 62 M.J. at 254-55. In Witham, the court considered the case

In that context, the Courts of Criminal Appeals, the first-level standing courts in the military justice system, provide an appropriate forum for consideration of coram nobis petitions regarding courts-martial.  During the initial consideration of a case, such as the case now before us, they engage in de novo consideration of the record and expressly act on the findings and sentence.  Article 66(c), UCMJ.  With respect to collateral review of the present case, they are well-positioned to determine whether corrective action on the findings and sentence is warranted, including ordering any factfinding proceedings that may be necessary.

4.   The sequence of review in the present case

The Courts of Criminal Appeals have the authority, expertise, and case-specific knowledge appropriate to conduct the initial review of coram nobis petitions, particularly in

---

under the general habeas statute, 28 U.S.C. § 2241, and denied relief on the grounds that three of the petitioner's claims had been considered fully and fairly in the military justice system and the remaining two claims were procedurally defaulted.  355 F.3d at 506.  In that context, the court did not address exhaustion of other remedies, such as review under the All Writs Act, 28 U.S.C. § 1651(a).  In Gilliam, the court concluded that the district court had erred in treating a petition under § 2241 as a claim for relief under § 2255.  2000 U.S. App. LEXIS 3684, at *5-*6, 2000 WL 268491, at *2-*3.  The court remanded the case to the district court for further proceedings, including consideration of whether the petitioner had exhausted his remedies in the military justice system.  2000 U.S. App. LEXIS 3684, at *7, 2000 WL 268491, at *3.

view of the principle that coram nobis petitions should be brought before the court that rendered the judgment. An Article III court, when asked to consider a court-martial conviction on an issue that has not been fully and fairly reviewed within the military justice system and has not been defaulted procedurally, is likely to defer action pending review by the court that approved the conviction. The sequence of review -- collateral review in the military justice system prior to review by the Article III courts -- reflects adherence to the concept that the primary responsibility for addressing challenges to courts-martial resides with the courts in the military justice system established by Congress.

Our conclusion -- that the Court of Criminal Appeals provides an appropriate forum for coram nobis review -- takes into account that the present case does not involve the propriety of jurisdiction to convene a court-martial. The present case involves the jurisdiction to review a case properly referred to a court-martial, unlike, for example, United States ex rel. Toth v. Quarles, 350 U.S. 11 (1955), which addressed the question of jurisdiction to try a person by court-martial. In Toth, the Supreme Court held that a court-martial may not be convened to try a former servicemember who had no relationship with the military at the time of trial. Id. at 23. The present case involves a different question: whether a court-martial

conviction, imposed on a servicemember while in military status, is subject to collateral review under the All Writs Act by the court that approved the conviction. When court-martial jurisdiction has been invoked properly at the time of trial, the jurisdiction of the Court of Criminal Appeals to review the case does not depend on whether a person remains in the armed forces at the time of such review. See United States v. Davis, 63 M.J. 171, 176-77 (C.A.A.F. 2006) (citing cases). In the present case, the court-martial that convicted Appellant had jurisdiction over both the person and the offense. The Court of Criminal Appeals had jurisdiction to review and approve the findings and sentence on direct review. As such, the Court of Criminal Appeals is an appropriate forum to receive and consider a writ of coram nobis that involves a collateral challenge to the court's approval of the findings and sentence.

The Court of Criminal Appeals did not err by reviewing Appellant's petition under the All Writs Act. We consider next whether Appellant's petition meets the criteria for issuance of a writ of error coram nobis.

### III. CORAM NOBIS

A writ of error coram nobis requests the court that imposed the judgment to consider exceptional circumstances, such as new facts or legal developments, that may change the result. See

25

Loving, 62 M.J. at 252. Appellant's coram nobis petition asked the Court of Criminal Appeals to take corrective action with respect to the findings and sentence that had been approved by the court on direct review. The decision of the Court of Criminal Appeals on a writ petition is subject to appellate review. See, e.g., Dettinger v. United States, 7 M.J. 216, 222-24 (C.M.A. 1979); C.A.A.F. R. 4.(b)(2); R.C.M. 1204(a) Discussion.

Subsection A discusses the limitations on issuance of a coram nobis writ. Subsection B addresses the application of the threshold limitations to the circumstances of the present appeal. Subsection C considers whether a writ of error coram nobis is necessary or appropriate with respect to Appellant's claim that he was denied his constitutional right to the effective assistance of counsel.

A. LIMITATIONS ON THE AVAILABILITY OF CORAM NOBIS

The Supreme Court, in Morgan, 346 U.S. at 511, observed that coram nobis permits "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review," but only under very limited circumstances. Although a petition may be filed at any time without limitation, a petitioner must meet stringent threshold requirements: (1) the alleged error is of the most fundamental character; (2) no remedy other than coram nobis is available to rectify the

26

consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.  See id. at 512-13; Loving, 62 M.J. at 252-53; 28 James Wm. Moore et al., Moore's Federal Practice § 672.02[2][c], at 672-43-46 (3d ed. 2007); 3 Charles Alan Wright et al., Federal Practice and Procedure:  Criminal § 592 (3d ed. 2004); 6 Wayne R. LaFave et al., Criminal Procedure § 28.9(a), at 121-22 (2d ed. 2004).

This Court has not previously identified the standards applicable to review of an ineffective assistance of counsel claim raised via a coram nobis petition.  At a minimum, such standards must ensure that relief is limited to circumstances in which the requested writ is "necessary or appropriate" within the meaning of the All Writs Act."  Loving v. United States, 64 M.J. 132, 145 (C.A.A.F. 2006).  To implement that admonition, we adopt the two-tiered evaluation used by Article III courts for coram nobis review of ineffective assistance of counsel claims. In the first tier, the petitioner must satisfy the threshold requirements for a writ of coram nobis, as described above.  If the petitioner does so, the court then analyzes, in the second

tier, the ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984).  See, e.g., United States v. Bejacmar, 217 F. App'x 919, 922-23 (11th Cir. 2007) (petitioner did not satisfy coram nobis threshold requirements because he failed to explain why he did not include his ineffective of counsel claim in his prior request for habeas relief); Evola v. Attorney General of the United States, 190 F. App'x 171, 174-76 (3d Cir. 2006) (assuming petitioner met coram nobis threshold requirements, the claim failed to demonstrate prejudice under Strickland); United States v. Kwan, 407 F.3d 1005, 1017-18 (9th Cir. 2005) (petitioner satisfied coram nobis threshold requirements and demonstrated that counsel's erroneous advice on immigration consequences of guilty plea was both deficient and prejudicial); United States v. Castro, 26 F.3d 557, 559-63 (5th Cir. 1994) (petitioner satisfied coram nobis threshold requirements and his claim that counsel failed to inform him, prior to guilty plea, of opportunity to request a judicial recommendation against deportation remanded to district court for determination of whether it constituted ineffective assistance of counsel).  Because the claim arises under the All Writs Act, the petitioner must establish a clear and indisputable right to the requested relief.  Cheney v. United States Dist. Court, 542 U.S. 367, 381 (2004).

   B.   APPLICATION OF THE CORAM NOBIS THRESHOLD CRITERIA

   Appellant's writ petition meets the threshold criteria for coram nobis review.  First, the alleged error, denial of the Sixth Amendment right to the effective assistance of counsel, is of the most fundamental character.  See, e.g., Kwan, 407 F.3d at 1018; Castro, 26 F.3d at 559; cf. Morgan, 346 U.S. at 512-13 (coram nobis appropriate to remedy denial of Sixth Amendment right to the assistance of counsel).

   Second, there is no other adequate remedy, other than consideration of coram nobis by the Navy-Marine Corps Court of Criminal Appeals, to rectify the consequences of the alleged error.  Appellant is not in custody, so he cannot obtain relief through a writ of habeas corpus.  Morgan, 346 U.S. at 510 (rejecting the contention that the federal habeas corpus statute should be construed "to cover the entire field of remedies in the nature of coram nobis").

   The pending deportation hearings do not provide Appellant with an adequate remedy.  The proper forum for post-conviction review of a court-martial proceeding is a collateral review proceeding, see Section II.A., supra, not an administrative proceeding in which the proposed agency action is a collateral consequence of the conviction.  In an administrative forum addressing the collateral consequences of a conviction, such as deportation, the hearing officer and any subsequent reviewing

29

court would be obligated to give res judicata effect to the court-martial conviction.  See Section II.C., supra.  Because Appellant's claim did not receive full and fair consideration within the military justice system on direct review, an outside court is unlikely to review his writ petition prior to such consideration by the Court of Criminal Appeals, the first-level standing court that approved the findings and sentence at issue, as discussed supra in Section II.D.

Third, valid reasons exist for not seeking relief earlier. Appellant's claim is that his counsel misinformed him as to the immigration consequences of his guilty plea and that avoiding deportation was the primary motivation for his guilty plea.  His conviction became final when it was affirmed by the Court of Criminal Appeals on February 24, 2000, because Appellant did not seek further review.  However, the immigration consequences did not become known to him until the Government initiated deportation proceedings in 2006 and Appellant sought coram nobis relief at the lower court within a few months of being notified of those proceedings.

Fourth, the new information (the immigration consequences) could not have been discovered through the exercise of reasonable diligence prior to the original judgment.  Appellant retained civilian counsel to represent his interests in the court-martial proceedings.  Assuming, for purposes of the

threshold inquiry that his unrebutted allegations are true, he exercised reasonable diligence by retaining counsel, calling counsel's attention to his concern about immigration consequences, and relying on counsel's advice assuring him that he would not be deported on the basis of a special court-martial conviction.

Fifth, the writ does not seek to reevaluate previously considered evidence or legal issues. The appellate proceedings on direct review did not consider whether Appellant's plea was compromised by misleading advice from counsel.

Sixth, the sentence has been served, but serious consequences persist. The Government, through USCIS, has initiated deportation proceedings that rely primarily on Appellant's court-martial conviction as the basis for deportation.

The threshold criteria establish eligibility for review, not the propriety of the requested writ. We consider next whether the court below erred in denying relief with respect to Appellant's ineffective assistance of counsel claim

C. INEFFECTIVE ASSISTANCE OF COUNSEL

1. Applicable standards

A military accused is entitled under the Constitution and Article 27(b), UCMJ, 10 U.S.C. § 827(b) (2000), to the effective assistance of counsel. United States v. Scott, 24 M.J. 186,

31

187-88 (C.M.A. 1987) (citing Strickland, 466 U.S. 668).  An accused making a claim of ineffective assistance "must surmount a very high hurdle."  United States v. Perez, 64 M.J. 239, 243 (C.A.A.F. 2006) (citation and quotation marks omitted).  Courts reviewing such a claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  The presumption of competence will not be overcome unless the accused demonstrates:  first, a deficiency that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment"; and second, that the accused was prejudiced by errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  United States v. Moulton, 47 M.J. 227, 229 (C.A.A.F. 1997) (quoting Strickland, 466 U.S. at 687 ) (quotation marks omitted).  When challenging the effectiveness of counsel in a guilty plea case, the accused must also "show specifically that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  United States v. Alves, 53 M.J. 286, 289 (C.A.A.F. 2000) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The burden of establishing the truth of factual matters relevant to the claim of ineffective assistance rests with the accused.  See United States v. Polk, 32 M.J. 150, 153 (C.M.A.

1991).  If there is a factual dispute on a matter pertinent to the claim, the determination as to whether further factfinding will be ordered is resolved under United States v. Ginn, 47 M.J. 236 (C.A.A.F. 1997).

2.   Appellant's Claim of Ineffective Assistance of Counsel

Appellant's Sixth Amendment claim focuses on the advice he received from counsel prior to trial regarding the deportation consequences of a guilty plea.  The declaration accompanying Appellant's coram nobis petition states that:  (1) he retained Mr. C as civilian counsel to represent him at his court-martial in 1998; (2) he told Mr. C that he was a permanent resident alien who had been living in the United States for fourteen years, that he intended to remain indefinitely, that his primary concern was to avoid the risk of deportation, and that he was more concerned about deportation and separation from his family than the risk of going to jail; (3) Mr. C advised Appellant that if he contested the charges, he would likely face a general court-martial, and that an acquittal would avoid deportation consequences; but a conviction at a general court-martial would constitute a felony that could be used as a basis for deportation; (4) Mr. C further advised him that a special court-martial would constitute a misdemeanor and could not be used as a basis for deportation; (5) Appellant entered into a pretrial agreement that provided for referral of charges to a special

33

court-martial; and (6) Mr. C advised him of the specific words that he would have to use in the plea colloquy to ensure that the military judge did not reject the plea.

With respect to Appellant's plea, we note that there are specialized requirements for a guilty plea in the military justice system. See Article 45, UCMJ. The military judge must engage in a specific dialogue with the accused, in which the accused addresses the voluntariness of the plea, describes the factual basis for guilt, and demonstrates an understanding of any pretrial agreement. R.C.M. 910(d)-(f). The record reflects that Appellant had considerable difficulty in acknowledging guilt during the military judge's plea inquiry. The inquiry in Appellant's case extended over a two-day period before the military judge finally accepted the plea.

Appellant was convicted, served his time in confinement, and returned to civilian life. On two occasions, he applied to the Immigration and Naturalization Service for naturalization. On both occasions, his application was rejected, citing his court-martial conviction. Each time, however, he was informed that the rejection was based on conduct within the five-year period prior to his application and was "without prejudice" to a future application. In neither instance did the Government suggest that he would face deportation.

In late 2006, however, six years after his conviction was affirmed on direct appeal, the Government initiated deportation proceedings against him. The deportation charges filed on October 30, 2006 and April 12, 2007 are based on his 1998 conviction by special court-martial.

Appellant's declaration states that Mr. C's advice regarding deportation consequences was the "decisive factor" in his decision to plead guilty, and that he would have insisted on going to trial had he been advised that a guilty plea could have resulted in deportation. Appellant contends that the deportation proceedings demonstrate that his counsel was ineffective because the very consequence that counsel assured him could be avoided by a guilty plea at a special court-martial is now being pursued by the Government.

An attorney's failure to advise an accused of potential deportation consequences of a guilty plea does not constitute deficient performance under Strickland. See, e.g., United States v. Fry, 322 F.3d 1198, 1200 (9th Cir. 2003). An affirmative misrepresentation about such consequences, however, can constitute deficient performance, particularly when the client requests the information and identifies the issue as a significant factor in deciding how to plead. See, e.g., Kwan, 407 F.3d at 1015-16; United States v. Couto, 311 F.3d 179, 187-88 (2d Cir. 2002); Qiao v. United States, No. 07 Civ. 3727

35

Denedo v. United States, No. 07-8012/NA

(SHS), 98 Cr. 1484 (SHS), 2007 U.S. Dist. LEXIS 87934, at *8, 2007 WL 4105813, at *3 (S.D.N.Y. Nov. 15, 2007); United States v. Khalaf, 116 F. Supp. 2d 210, 217 (D. Mass. 1999); United States v. Mora-Gomez, 875 F. Supp. 1208, 1213 (E.D. Va. 1995). But see Commonwealth v. Padilla, No. 2006-SC-000321-DG, 2008 Ky LEXIS 3, at *7, 2008 WL 199818, at *3 (Ky. Jan. 24, 2008). Although occurring in a different context, the Supreme Court has noted the importance of immigration consequences to a defendant who is considering whether to plead guilty. INS v. St. Cyr, 533 U.S. 289, 322-23 (2001), superseded by statute on other grounds, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005).

To show prejudice from ineffective assistance of counsel in a guilty plea case, an accused must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Alves, 53 M.J. at 289. The focus is not on the outcome of a potential trial, but on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59; cf. id. at 60 (finding no prejudice where petitioner neither alleged that he would not have pleaded guilty absent counsel's erroneous advice, nor any special circumstances "that might support the conclusion that he placed particular emphasis" on the subject of the erroneous advice).

36

Appellant, noting that the Government has not rebutted his declaration, asserts that we should treat the matters stated therein as accurate and decide the legal issue of whether his counsel was ineffective. See Ginn, 47 M.J. 236. In the current posture of the case, we decline to do so. The case before us is a writ appeal of a decision from the Court of Criminal Appeals, not an original writ petition. At the Court of Criminal Appeals, the Government filed a motion to dismiss and reserved the right to file an answer addressing the substance of the petition if ordered to do so by the court. The court below denied the Government's motion to dismiss, but also summarily denied Appellant's petition on the merits without ordering a Government response. As a result, the Government did not have the opportunity before the Court of Criminal Appeals to obtain affidavits from the counsel who represented Appellant at trial and to submit such other matter as might have a bearing on the merits of Appellant's claim.

The court below should not have dismissed Appellant's petition without obtaining and assessing such information. The matter set forth in Appellant's declaration, if true, warranted consideration under Strickland, particularly in light of other aspects of the trial and appellate record, including the nature of the providence inquiry, Appellant's apparent belief that he could apply for naturalization without facing deportation

37

consequences, and the subsequent deportation proceedings.  Until
the Government is required to respond on the merits, however, it
would be inappropriate to render a judgment on the merits of his
petition.  At this stage, Appellant's petition facially
establishes a sufficient basis for coram nobis review, but a
ruling on his petition would be premature without a Government
response, consideration by the Court of Criminal Appeals as to
whether counsel's performance was deficient and, if so, whether
Appellant was prejudiced thereby.  See United States v. Castro,
26 F.3d at 563; Downs-Morgan v. United States, 765 F.2d 1534,
1541-42 (11th Cir. 1985).  In that regard, we note that the high
hurdles established in Strickland and Hill, both of which
involved collateral review, establish the appropriate standards
for assessing the Sixth Amendment claim in the present case,
both in terms of allegations of deficiency and prejudice.  See
Khalaf, 116 F. Supp. 2d at 216 and cases cited therein.


IV.  DECISION

    Accordingly, we remand Appellant's petition to the United
States Navy-Marine Corps Court of Criminal Appeals for further
proceedings, where the Government will have the opportunity to
obtain affidavits from defense counsel and submit such other
matter as the court deems pertinent.  The Court of Criminal
Appeals will then determine whether the merits of Appellant's

38

petition can be resolved on the basis of the written submissions, or whether a factfinding hearing is required under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). The court will determine whether Appellant's counsel rendered deficient performance and, if so, whether such deficiency prejudiced Appellant under Strickland v. Washington, 466 U.S. 668 (1984).  If prejudice is found, the court shall determine whether the requested relief should be granted.

Denedo v. United States, No. 07-8012/NA

STUCKY, Judge (dissenting):

I find myself in agreement with many of the points made by Judge Ryan in her able and scholarly dissenting opinion. I consider it established that we have coram nobis jurisdiction in cases in which the jurisdiction of the court-martial is at issue. The extent of our jurisdiction beyond this very limited area is questionable. However, even assuming that we have such jurisdiction, this is not a proper case for coram nobis relief. I would, therefore, deny the petition and do not find it necessary now to determine the extent, if any, of our jurisdiction beyond the circumscribed area set out above. See, e.g., United States v. Tavares, 10 C.M.A. 282, 283, 27 C.M.R. 356, 357 (1959) (assuming without deciding that Court had jurisdiction, "this case presents no grounds for invoking such extraordinary relief").

The majority opinion cites United States v. Frischholz, 16 C.M.A. 150, 36 C.M.R. 306 (1966), as authority for exercising jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a) (2000) after Appellant's conviction became final under Article 76, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 876. Denedo v. United States, __ M.J. __ (18) (C.A.A.F. 2008). In Frischholz, the government argued that the All Writs Act was intended to apply only to Article III courts and at least implied that our location "for administrative purposes" in the

Department of Defense made us something other than a "court" for the purposes of the Act.  Id. at 308 n.1.  This Court properly rejected those arguments, holding that the Act's application to "courts established by Act of Congress" was not limited to courts established by Act of Congress pursuant to Article III of the Constitution.  Id. at 307-08.  However, it is one thing to state that this Court has authority to issue writs under the All Writs Act and quite another to conclude that that authority includes a general mandate to correct errors in cases that are final by means of coram nobis.  It is established that a writ issued under the Act must be in aid of this Court's existing jurisdiction and may not be a vehicle for expanding it.  Clinton v. Goldsmith, 526 U.S. 529, 534-35 (1999); Font v. Seaman, 20 C.M.A. 387, 390, 43 C.M.R. 227, 230 (1971); United States v. Snyder, 18 C.M.A. 480, 482-83, 40 C.M.R. 192, 194-95 (1969).

In Del Prado v. United States, 23 C.M.A. 133, 48 C.M.R. 749 (1974), and Gallagher v. United States, 22 C.M.A. 191, 46 C.M.R. 191, (1973), we granted relief in cases in which direct review was no longer available or had been completed.  However, both of these cases involved fundamental and inherent problems of jurisdiction.  In Del Prado, the accused was tried by a military judge alone although he had not requested in writing that he be so tried, Del Prado, 23 C.M.A. at 133, 48 C.M.R. at 749, while in Gallagher, enlisted members sat on the accused's court-

2

martial although he had not personally submitted a written request for enlisted representation.[1] Gallagher, 22 C.M.A. at 192, 46 C.M.R. at 192. Of course, a federal court always has jurisdiction to determine its own jurisdiction. United States v. United Mine Workers of America, 330 U.S. 258, 292 n.57 (1947); Mansfield, Coldwater & Lake Michigan Railway Company v. Swan, 111 U.S. 379, 382 (1884). The expansive statements as to jurisdiction in Del Prado and Gallagher, particularly the assertion in Gallagher that the filing of a petition alone vests jurisdiction in this Court, 22 C.M.A. at 193, 46 C.M.R. at 193, must be read in that context. Neither Del Prado nor Gallagher is authority for a general superintendency over cases in which Article 67, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867 (2000), jurisdiction is otherwise absent. Goldsmith, 526 U.S. at 536.[2]

While I consider our authority to grant the requested relief questionable, I need not reach that issue here, because

---

[1] See United States v. Dean, 20 C.M.A. 212, 215, 43 C.M.R. 52, 55 (1970), and United States v. White, 21 C.M.A. 583, 584, 588-89, 45 C.M.R. 357, 358, 362-63 (1972), for the jurisdictional nature of those errors.

[2] In Garrett v. Lowe, 39 M.J. 293 (C.M.A. 1994), we granted relief in a case in which fundamental jurisdiction was not at issue, based upon an instructional error. However, this case is distinguishable because, although Appellant styled his request for relief as one for coram nobis, he was still in confinement at the time and therefore habeas corpus was available. Id. at 295. We granted sentence relief without stating which prerogative writ was the basis of the action. Id. at 297.

Appellant has not made out a case for relief on the merits.
This is not a case in which there existed any fundamental
jurisdictional impediment to Appellant's original trial by
court-martial, and indeed none is alleged. Rather, what we have
here is a case, like many others, in which the complaint is
ineffective assistance of counsel. Moreover, the claim of
ineffective assistance relates not to the conduct, findings, or
sentence of the court-martial, but purely to a collateral
consequence thereof.

Appellant asserts that his primary concern in his court-
martial was avoiding deportation; that he was erroneously
advised by his civilian counsel that a conviction by a special
court-martial would not subject him to deportation, but a
conviction by a general court-martial would; that he was advised
that the Government would take the case to a general court-
martial unless he pled guilty; that, in reliance upon this
advice, he pled guilty before a special court-martial; that
eight years later, the Department of Homeland Security initiated
deportation proceedings against him on the basis of the
conviction; and that, had he known of the possibility of
deportation, he would have pled not guilty and taken his chances
with the general court-martial.

Assuming, without deciding, that Appellant's counsel
incorrectly advised him as to the state of the law, this alone

does not entitle him to coram nobis relief.  Deportation is not only a collateral consequence of a court-martial conviction, but a consequence entirely outside the purview of the armed forces and the system of military justice.  As a general rule, this Court has concerned itself with the collateral consequences of court-martial convictions only in very limited circumstances. United States v. Miller, 63 M.J. 452, 457 (C.M.A. 2006) (sex offender registration); United States v. Boyd, 55 M.J. 217, 221 (C.A.A.F. 2001) (retirement benefits); United States v. Hall, 46 M.J. 145, 146 (C.A.A.F. 1997) (dependent benefits); United States v. McElroy, 40 M.J. 368, 371–72 (C.M.A. 1994) (veterans' benefits); United States v. Griffin, 25 M.J. 423, 424 (C.M.A. 1988) (retirement benefits); United States v. Bedania, 12 M.J. 373, 374–75 (C.M.A. 1982) (administrative separation resulting from guilty plea).  In Miller, we established a prospective prophylactive rule that, while not per se ineffective assistance, defense counsel's failure to advise the accused of possible sex offender requirements for offenses to which he is pleading guilty will be "one circumstance this Court will carefully consider in evaluating allegations of ineffective assistance of counsel."  Miller, 63 M.J. at 459.  In Boyd, we established a prospective rule requiring military judges to instruct on the effect of a punitive discharge on retirement

benefits, if requested by the defense and supported by the evidence.  <u>Boyd</u>, 55 M.J. at 221.

Coram nobis is an "extraordinary remedy" limited to "errors of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid."  <u>United States v. Morgan</u>, 346 U.S. 502, 509 n.15 (1954) (quotation marks and citation omitted); <u>United States v. Mayer</u>, 235 U.S. 55, 69 (1914).  In <u>Hirabayashi v. United States</u>, 828 F.2d 591, 604 (9th Cir. 1987), the Court of Appeals for the Ninth Circuit set out four criteria for the issuance of the writ:  (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) sufficient adverse consequences exist to satisfy the case or controversy requirement; and (4) the error is of the most fundamental character.

The third criterion applies to the Article III courts, not to a court of purely statutory jurisdiction like this one.  The second criterion admittedly favors Appellant, since the deportation proceedings were instituted years after the court-martial.  However, neither the first nor the last supports the requested relief.

With regard to the first criterion, the lack of a more usual remedy, Appellant has not yet been deported.  As a lawful permanent resident, he has a statutory right to notice and a

hearing before an immigration judge, as well as appellate rights both within the executive branch and to the Article III courts. Indeed, it appears that Appellant's counsel intends to argue that his special court-martial conviction does not constitute an "aggravated felony" within the meaning of the immigration laws -- the very question that is the gravamen of this ineffective assistance of counsel claim. Writ-Appeal Petition at 18, n.11, Denedo v. United States, No. 07-8012 (C.A.A.F. Mar. 30, 2007).[3] In any event, the availability of meaningful direct review of his immigration proceeding, in the venue and according to the procedures set out by Congress for such matters, significantly undercuts any argument for extraordinary relief in the military justice system.

The fourth Hirabayashi criterion, that the error be of "the most fundamental character," is not met either. There was no jurisdictional defect in Appellant's court-martial; his sole complaint is the alleged ineffective assistance of counsel which admittedly did not manifest itself until years after the court-martial, when the deportation proceeding was instituted. Generally, failure to advise a client in a criminal trial of the potential adverse immigration effects, including deportation, of a guilty plea or conviction has not been held to constitute

---

[3] If Appellant's conviction is not an "aggravated felony," then it would appear that the advice given by his counsel at the court-martial was legally correct.

ineffective assistance of counsel.  This is because deportation, or other immigration consequences, are collateral to the criminal conviction and are thus not covered by the Sixth Amendment in the criminal context.  See, e.g., Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992); Santos v. Kolb, 880 F.2d 941, 944-45 (7th Cir. 1989), superseded by statute on other grounds, Immigration Act of 1990, Pub. L. No. 101-649, § 505(b), 104 Stat. 5050 (1990), as recognized in Rodriguez v. United States, No. 92-3163, 1995 U.S. App. LEXIS 7920, at *3, 1995 WL 156669, at *1 (7th Cir. Apr. 6, 1995); United States v. George, 869 F.2d 333, 337 (7th Cir. 1989); United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988); United States v. Gavilan, 761 F.2d 226, 228-29 (5th Cir. 1985).  The 1996 amendments to the Immigration and Nationality Act relating to "aggravated felonies" did not change the collateral nature of immigration proceedings.  El-Nobani v. United States, 287 F.3d 417, 421 (6th Cir. 2002); United States v. Armador-Leal, 276 F.3d 511, 513 (9th Cir. 2002); United States v. Gonzalez, 202 F.3d 20, 26-27 (1st Cir. 2000).

Appellant, relying on United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir. 2005) and United States v. Couto, 311 F.3d 179, 188 (2d Cir. 2002), attempts to draw a distinction between failure to advise as to the potential immigration consequences of a conviction and incorrect advice on the subject.  But a

defendant in a criminal trial who alleges ineffective assistance of counsel must show more than incorrect advice; he must show prejudice.  To meet this standard, he must show that, absent the errors, the outcome of the trial would have been different, and that the result of the trial was fundamentally unfair or unreliable.  _Strickland v. Washington_, 466 U.S. 668, 687 (1984); _accord_ _Lockhart v. Fretwell_, 506 U.S. 364, 369 (1993).  Here, all we are presented with is the bald assertion that, had the advice been correct, Appellant would not have pled guilty, but would have taken his chances before a general court-martial, where a conviction would have exposed him to a considerably harsher sentence and, in any event, still would have subjected him to deportation.  This is insufficient.  _Parry v. Rosemeyer_, 64 F.3d 110, 118 (3d Cir. 1995); _Armstead v. Scott_, 37 F.3d 202, 210 (5th Cir. 1994); _Key v. United States_, 806 F.2d 133, 139 (7th Cir. 1986); _see also_ _State v. Sabillon_, 622 S.E.2d 846, 848-49 (2005).  It is questionable whether Appellant has even made out a case for prejudice under applicable ineffective assistance of counsel law; in any event, he has not met the far higher standard -- error "of the most fundamental character" -- necessary for coram nobis relief.[4]

---

[4] Whether any nonjurisdictional error can meet the "fundamental character" standard is a question that need not be reached in this case.  I am satisfied that on these facts, Appellant has not met that standard.

I respectfully dissent.

Denedo v. United States, No. 07-8012/NA

RYAN, Judge (dissenting):

"Courts created by statute can have no jurisdiction but such as the statute confers." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988) (quoting Sheldon v. Sill, 49 U.S. 441, 449 (1850)). There is no statutory basis for jurisdiction in this Court in this case: The petitioner is a civilian, lawfully discharged from military service pursuant to a court-martial conviction. And the case has been final, for purposes of both Articles 71 and 76, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 871, 876 (2005), for seven years. Indeed, the statutory limits of this Court's jurisdiction are precisely to the contrary. See Articles 2, 3, 66, 67, 73, and 76, UCMJ, 10 U.S.C. §§ 802, 803, 866, 867, 873, 876 (2005).

Although we have no jurisdiction over Denedo and final cases fall outside our statutory mandate, the majority nonetheless concludes today that this Court has jurisdiction. This is perplexing. In addition to being contrary to the statutory scheme, this Court's assertion of jurisdiction flies in the face of Supreme Court precedent, the decisions of at least two federal circuit courts of appeal, and the position, for the past fifty-seven years, of the solicitors general of the United States as agents of the President, commander in chief of the armed forces. See Solorio v. United States, 483 U.S. 435, 439-40 (1987) (recognizing that military jurisdiction is tied to

1

military status, i.e., U.S. Const. art. I, § 8, cl. 14 -- a person within the "land and naval Forces"); United States ex rel. Toth v. Quarles, 350 U.S. 11, 14-15 (1955) (holding that Article I military jurisdiction could not be "extended to civilian ex-soldiers who had severed all relationship with the military and its institutions"); Gusik v. Schilder, 340 U.S. 128, 132 (1950) (interpreting the predecessor to Article 76 -- Article 53 of the Articles of War, 62 Stat. 639, 10 U.S.C. § 1525 (1950) -- and concluding that finality "describe[es] the terminal point for proceedings within the court-martial system"); see also Witham v. United States, 355 F.3d 501, 505 (6th Cir. 2004) (stating that "neither the Uniform Code of Military Justice nor the Manual for Courts-Martial provides for collateral review within the military courts"); Gilliam v. Bureau of Prisons, No. 99-1222, 2000 U.S. App. LEXIS 3684, at *4, 2000 WL 2684919, at *2, (8th Cir. Mar. 10, 2000) ("Unlike the practice in the United States Circuit Courts of Appeal and District Courts, neither the UCMJ . . . nor the Manual for Courts-Martial . . . provides procedures for collateral, post-conviction attacks on guilty verdicts.") (quoting United States v. Murphy, 50 M.J. 4, 5 (C.A.A.F. 1998) (quotation marks omitted)); Brief for Petitioners on the Jurisdictional Issues at 7, Schlesinger v. Councilman, 420 U.S. 738 (1975) (No. 73-662) (stating that the legislative history of Article 76, UCMJ shows

2

that Article III court collateral review was expected to be "the sole exception to the finality of actions within the military court system"); Brief for Respondent at 3-4, Gusik, 340 U.S. 128 (No. 110) (stating that the exception to finality for a motion for new trial in the Articles of War provided the sole collateral remedy within the courts-martial system).  I agree with the Supreme Court, the Sixth and Eighth Circuits, the solicitors general, and the Government's position in this case: we have no jurisdiction over a discharged civilian's case that is final under Article 76, UCMJ.

The majority conclusorily asserts that it has jurisdiction, grounded in the fact that Denedo was once in the military, and his case once fell within the statutory jurisdiction of the military justice system.  See Denedo v. United States, __ M.J. __ (10) (C.A.A.F. 2008) ("The existing statutory jurisdiction of the Navy-Marine Corps Court of Criminal Appeals includes cases such as Appellant's, in which the sentence extends to a punitive discharge.").  It does not explain how jurisdiction follows in this case.  As the Supreme Court reminded this Court not so very long ago, we are "not given authority, by the All Writs Act [28 U.S.C. § 1651(a) (2000)] or otherwise, to oversee all matters arguably related to military justice, or to act as a plenary administrator even of criminal judgments [we have] affirmed." Clinton v. Goldsmith, 526 U.S. 529, 536 (1999).

<u>Denedo v. United States</u>, No. 07-8012/NA

It is unclear to me why the Court charts this course today. Denedo's claim -- ineffective assistance of counsel, based on newly discovered evidence, after his case is final under Article 76, UCMJ -- would be cognizable immediately in federal court but for this Court's refusal to state that it lacks jurisdiction. <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003) (stating that ineffective assistance may be raised on collateral review irrespective of whether petition could have raised it on direct appeal); <u>Dobbs v. Zant</u>, 506 U.S. 357, 358-60 (1993) (holding that courts should consider newly discovered evidence regarding ineffective assistance of counsel on collateral review). I do not question that the military justice system can fairly assess Denedo's claim. But the majority's suggestion that the military system is somehow better able to assess his claim in this case, a fact-bound question involving a civilian and a civilian attorney and grounded in part in assessment of immigration law, is unfounded.

## I.   <u>Absent Jurisdiction No Writ May Issue</u>

The Court provides relief today by remanding the case for additional action by the Court of Criminal Appeals (CCA), in reliance on the All Writs Act. But in the absence of jurisdiction, a writ may not issue. <u>Marbury v. Madison</u>, 5 U.S. 137, 173 (1803). Most recently the Supreme Court reaffirmed this longstanding principle as it relates to the jurisdiction of

this Court, stating that, "the express terms of the [All Writs] Act confine the power of the CAAF to issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." Goldsmith, 526 U.S. at 534-35. The All Writs Act is a mechanism for exercising power a court already has. The starting point of the analysis must always be whether a court has jurisdiction before proceeding to the question whether a writ should issue. See 28 U.S.C. § 1651(a) (2000).

This Court, as a legislatively created Article I court, is a court of limited jurisdiction. Our limited powers are defined entirely by statute. See generally Articles 2-3, 66-76, UCMJ, 10 U.S.C. §§ 802-03, 866-76 (2005). Despite the majority's holding to the contrary, under those Articles no jurisdiction exists in this case.

> A. This Court Does Not Have Jurisdiction Over
> Discharged Civilians Who Have Severed
> Their Connection With the Military

Article I, § 8, cl. 14 of the U.S. Constitution empowers Congress "[t]o make Rules for the Government and Regulation of the land and naval Forces." Articles 2 and 3, UCMJ, reflect the considered judgment of Congress as to those classes of persons who fall within that constitutional grant. Article 2, UCMJ, delineates jurisdiction over "[p]ersons subject to this chapter." Persons discharged from the armed forces, other than retired members under Article 2(a)(4) and (5), UCMJ, or persons

5

in custody of the armed forces serving a sentence imposed by court-martial under Article 2(a)(7), UCMJ, are not included within Article 2, UCMJ.  Article 3, UCMJ, entitled "[j]urisdiction to try certain personnel," sets forth, inter alia, the limited circumstance in which a discharged servicemember is not relieved from military jurisdiction:  a person charged with fraudulently obtaining his discharge or who has deserted.[1]  Article 3(b) and (c), UCMJ.  Articles 2 and 3, UCMJ, are consonant with the considered view that the military justice system does not have jurisdiction over civilians, and that there is a military community, a civilian community, and "no third class which is part civil and part military."  William Winthrop, Military Law and Precedents 106 (2d. ed. 1920).

The Supreme Court has not hesitated to invalidate any efforts by Congress or the military to sweep civilians unattached to a military unit within the jurisdiction of the military justice system.  See, e.g., McElroy v. United States ex rel Guagliardo, 361 U.S. 281, 284-87 (1960) (holding that a provision of the UCMJ extending jurisdiction to persons accompanying the armed forces outside the continental limits of the United States could not be constitutionally applied to civilian employees in time of peace); Reid v. Covert, 354 U.S.

---

[1] Article 3(a), UCMJ, relates to persons currently in a status covered by Article 2, UCMJ.

6

1, 30-35 (1957) (invalidating the same provision as applied to civilian dependents of members of the armed forces in time of peace); Toth, 350 U.S. at 14 (recognizing that Article I military jurisdiction could not be "extended to civilian ex-soldiers who had severed all relationship with the military and its institutions").  I fear that today the majority invites the Supreme Court to issue another decision reaffirming the holdings of this line of cases.

### B.  Denedo is a Civilian Who Has Severed All Relationship With the Military

Denedo is a former servicemember lawfully discharged from military service pursuant to a court-martial conviction.  He has no current relationship with the military -- at least no more of a relationship than any other civilian who was formerly in the military might have if he had filed a writ of coram nobis here --  which is to say, no legally cognizable relationship with the military justice system under the UCMJ.

The majority acknowledges that Denedo was discharged from the Navy on May 30, 2000.  On that day, the bad-conduct discharge adjudged at his court martial and approved by the convening authority was effective, and Denedo was a civilian, completely detached from the military and the military justice system.  And, as stated above, Article 2, UCMJ does not provide jurisdiction over military personnel who have been discharged

7

from the military service and have no remaining connection to the military. Toth, 350 U.S. at 14 ("[i]t has never been intimated by [the Supreme] Court . . . that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions"). It is contrary to the limited nature of a legislatively created Article I court to exercise jurisdiction over a person not specifically prescribed by statute. The majority opinion fails to explain how we have jurisdiction over Denedo, given his discharge.

C. Collateral Review is Outside Article 67, UCMJ

Article 67, UCMJ, provides jurisdiction for this Court to "review the record" in specified cases reviewed by the CCA. The fact that Denedo's case was such a case is a truism that provides no legal authority or logical support for collateral review now that his case is final. The majority's reasoning from true premises to unrelated conclusions without statutory or other authority is unsound.

Moreover, it is not at all clear how Article 66 or 67, UCMJ, supports an assertion of jurisdiction to conduct collateral review. The CCAs have jurisdiction to act on "the findings and sentence as approved by the convening authority." Article 66(c), UCMJ. In undertaking this review, a CCA may only affirm such parts of the findings and sentence "as it finds

correct in law and fact and determines, on the basis of the entire record, should be approved." Id. While reasonable minds may differ as to what is included in "the record," matters that have not been reviewed by the convening authority are not part of the record of trial, and therefore are unreviewable by the CCA or this Court. See United States v. Beatty, 64 M.J. 456, 458 (C.A.A.F. 2007) (discussing what constitutes the "entire record" for purposes of Article 66(c), UCMJ, review).

Articles 66 and 67, UCMJ are statutes governing direct review of courts-martial[2] because the jurisdictional grants under Articles 66 and 67, UCMJ are tied to "the record." See Beatty, 64 M.J. at 458. It is not surprising that collateral review is not provided for within those statutes. Collateral review most often requires, by its terms, development and consideration of something outside "the record." See Parke v. Raley, 506 U.S. 20, 30 (1992) (citing Black's Law Dictionary 261 (6th ed. 1990)); see also John McKee VanFleet, The Law of Collateral

---

[2] This does not rule out jurisdiction in the limited exception recognized by the Supreme Court in Goldsmith, 526 U.S. at 536 to "compel adherence to its own judgment." See also United States v. United States District Court, 334 U.S. 258, 263-64 (1948) (discussing the power of federal courts of appeals to issue mandamus). And, as always, a court may question whether its initial judgment was void in the first instance for want of jurisdiction. United States v. Ruiz, 536 U.S. 622, 628 (2002) (citing United States v. United Mine Workers, 330 U.S. 258, 291 (1947)).

Attack on Judicial Proceedings 5-6 (1892) (defining a collateral attack).

In those instances where cases on direct review require additional fact finding, we have an unwieldy and imperfect system in place to facilitate inclusion of those facts in the record:  new factual matters must be developed at a court-martial, revisited by the convening authority, and "included" in the record for review.[3]  United States v. DuBay, 17 C.M.A. 147, 149; 37 C.M.R. 411, 413 (1967).  Additional awkward constructs were created to determine the threshold question whether additional facts were needed.  United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997).  But the fact that these procedures may apply on direct review is not relevant to whether this Court has the power to employ them on collateral review.  Moreover, it is untenable to suggest that jurisdiction for collateral review of final cases is clear under Articles 66 and 67, UCMJ, in instances where collateral review of the issue necessarily requires the development of facts outside the statutory grant. And this Court has no mechanism for doing so.  See United States v. Walters, 45 M.J. 165, 167 (C.A.A.F. 1996) (Cox, C.J., and Sentelle, J., United States Court of Appeals for the District of

---

[3] The permutations and legal gymnastics necessary to bring cases on direct review within our statutory grant in the limited circumstances where new facts must be brought within "the record" are challenging enough for any justice system.

Columbia, sitting by designation, concurring in the result)
(urging "the Joint-Service Committee on Military Justice to
consider and recommend to the President a procedure by which
collateral attacks on courts-martial might be litigated").[4]
There is no mention of, and thus no provision for, post-finality
collateral review anywhere within Article 66 or 67, UCMJ.

### D. Denedo Seeks Collateral Review

In this case Denedo filed a writ coram nobis at the CCA
seeking to challenge his court-martial conviction on the grounds
that his Sixth Amendment right to counsel was violated because
his counsel was ineffective. Denedo alleges that his civilian
counsel told him that if he pled guilty he would not be
deported. He alleges that he recently discovered that this was
not true. Obviously, this privileged conversation was not
included in the record of trial. For Denedo to have any hope of
prevailing, evidence extrinsic to the record must be developed.
See Massaro, 538 U.S. at 505 (stating the advantages of
collateral review in developing the factual predicate for an
ineffective assistance of counsel claim); see also DuBay, 17
C.M.A. at 149, 37 C.M.R. at 413. As the case is final, and no

---

[4] Chief Judge Cox's observation is relevant to this case. I note
that military counsel has entered an appearance before this
Court on behalf of Denedo. I question whether, under the
reasoning of the majority opinion, Article 70(a) and (c), UCMJ,
would require that Denedo, and all other similarly situated
litigants whose cases are final, be afforded military counsel as
their cases proceed.

11

convening authority or court-martial has jurisdiction over a discharged servicemember, we have no mechanism for developing these extrinsic facts.[5]

## II.  The Effect of Finality Under Article 76, UCMJ

In addition to lacking statutory jurisdiction over a civilian's writ seeking collateral review of a court-martial, today the Court acts on a case that has been "final" for seven years.

Denedo's bad-conduct discharge was capable of execution on May 30, 2000, because appellate review was completed and the findings and sentence were approved, reviewed, and affirmed as required by the UCMJ.  Execution of the bad-conduct discharge returned Denedo to civilian status.  Completion of appellate review also meant his case was "final" for purposes of Article 76, UCMJ.  See Rule for Courts-Martial (R.C.M.) 1209.  As expressed in Article 76, UCMJ, this means the same proceedings, findings, and sentence Denedo complains of here are "final and conclusive" within the court-martial system, subject to specific exceptions.

Article 76, UCMJ, states that:

---

[5] Even if the CCA or this Court acts on Denedo's claims of ineffective assistance of counsel, it is unclear how that necessarily grants the relief he truly requests.  He wishes to stop the deportation proceedings that stem from his conviction. But neither this Court nor the CCA has the power to prevent the Department of Homeland Security, Immigration and Customs Enforcement division, from exercising its deportation powers.

> The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive.  Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 874 of this title (article 74), and the authority of the President.

(emphases added).

The language of the statute suggests that once appellate review is complete, the findings and sentence are "final and conclusive," subject only to action upon a petition for a new trial pursuant to Article 73, UCMJ, remission and suspension actions by the service secretaries, pursuant to Article 74, UCMJ, or presidential action.[6]  No exception is listed for writs of coram nobis or other collateral review.

---

[6] Despite this clear statutory limitation the majority cites United States v. Davis, 63 M.J. 171, 176-77 (C.A.A.F. 2006), for the proposition that "[w]hen court-martial jurisdiction has been invoked properly at the time of trial, the jurisdiction of the Court of Criminal Appeals to review the case does not depend on whether a person remains in the armed forces at the time of such review."  Denedo, ___ M.J. ___ (25).  In Davis, unlike the current case, direct review had not been completed; therefore the case was not yet final.  63 M.J. at 176.  Nothing in Davis or the cases cited therein serves as precedent for the concept

13

### A. Finality Does Not Preclude Collateral Review by Article III Courts

It was soon recognized that applying the literal language of Article 76, UCMJ, raised constitutional concerns because it would, implicitly, conflict with the Suspension Clause. See U.S. Const. art. I, § 9, cl. 2; Schlesinger v. Councilman, 420 U.S. at 751. Consequently the Supreme Court interpreted the finality provision to not deprive Article III courts of collateral review authority. But the Supreme Court did note that Article 76, UCMJ, "describe[s] the terminal point for proceedings within the court-martial system." Schlesinger, 420 U.S. at 750 (quoting Gusik, 340 U.S. at 132). And no one suggests that the Court of Appeals of the Armed Forces is not part of the "court-martial system." See Article 67, UCMJ (describing this Court's subject-matter jurisdiction over courts-martial).

Instead of taking the Supreme Court's opinion in Schlesinger at face value, the majority claims it supports the proposition that Article 76, UCMJ, is merely a "prudential bar" to review of final decisions. This is clearly so for an Article III court. But the majority does not recognize that there is a difference between what is "prudential" for an Article III court, and what is a statutory directive for an Article I,

_____

that there is "continuing jurisdiction" over cases that are final under Article 76, UCMJ.

14

legislatively created court.  While an Article III court may, if it wishes, step into the breach whenever constitutional justiciability requirements are satisfied, this Court is limited to acting only when our statutory grant so allows.  Goldsmith, 526 U.S. at 535.

Schlesinger is not to the contrary.  The statutory framework, as drafted by Congress, signed into law by the President, and interpreted by the Supreme Court, counsels that we yield to the Article III courts once we have reached the "terminal point," as described by the finality provision in Article 76, UCMJ.  That collateral review is so circumscribed is neither surprising nor unjust given the reality that, where a case is final for purposes of Article 76, UCMJ, the individual will almost certainly no longer be a servicemember.[7]

### B.  Ignoring the Effect of Article 76, UCMJ, Eviscerates the Statutory Scheme

The majority cites the text of Article 76, UCMJ, but avoids discussing the specific exceptions to finality listed therein.

---

[7] That Article 76, UCMJ, is bypassed by the majority as irrelevant to jurisdiction is surprising.  Two years ago this Court, in response to the Government's argument that the Court did not have jurisdiction because a case was final, did not say that finality was irrelevant to its review.  Loving v. United States, 62 M.J. 235, 240-45 (C.A.A.F. 2006).  Instead, it went through a lengthy analysis to explain why the case was not, in fact, final under Article 76, UCMJ, although it ultimately concluded that it need not address whether this Court has jurisdiction after a case is final.  Id.

Having avoided the listed exceptions, it suggests that Article 76, UCMJ, is wholly "prudential" for both Article I and Article III courts. Given the holdings of the Supreme Court and the language of the statute, this interpretation is perplexing. The only exception to Article 76, UCMJ, finality recognized by the Supreme Court is Article III collateral review -- i.e., review outside the military justice system. Schlesinger, 420 U.S. at 749. And the only exceptions to finality contained within Article 76, UCMJ, itself are petitions for a new trial under Article 73, UCMJ, remission or suspension under Article 74, UCMJ, or presidential action.

Article 73, UCMJ, allows for collateral review within two years of convening authority action. Tellingly, this "special post-conviction remedy," Burns v. Wilson, 346 U.S. 137, 141 (1953), is vested not in this Court, but in the judge advocates general of each branch unless the case is pending before this Court or the CCA at the time the petition is made. An Article 73, UCMJ, petition for new trial, is the sole statutory provision for collateral review of final judgments by a court within our system. See Article 76, UCMJ. The decisions of at least two federal courts of appeal confirm this point, and today's decision creates a circuit split. See Witham, 355 F.3d at 505; Gilliam, 2000 U.S. App. LEXIS 3684, at *5, 2000 WL 268491, at *2. The position of these courts is consistent with

16

the position of the solicitors general of the United States in

Gusik and Schlesinger.  Brief for Petitioners on the

Jurisdictional Issues at 7, Schlesinger, 420 U.S. 738 (No. 73-

662); Brief for Respondent at 3-4, Gusik, 340 U.S. 128 (No.

110).

The majority opinion's contrary interpretation ignores both

the language of the statute and the statutory limitations placed

on claims for a new trial.  Denedo's claim is nothing more than

a petition for a new trial, dressed up as a writ of coram nobis.[8]

For this Court to permit a petition for a new trial to escape

the statutory limitations placed upon it by Congress and allow

this petition to proceed as a writ of coram nobis eviscerates

Article 73, UCMJ, and renders Article 76, UCMJ's, finality

provision meaningless.  See Reiter v. Sonotone Corp., 442 U.S.

330, 339 (1979) (citing United States v. Menasche, 348 U.S. 528,

538-539 (1955)) ("In construing a statute we are obliged to give

effect, if possible, to every word Congress used.").

---

[8] A writ coram nobis must be directed at the court that issued
the decision.  Lowery v. McCaughtry, 954 F.2d 422, 423 (7th Cir.
1992); see generally Abraham L. Freedman, The Writ of Error
Coram Nobis, 3 Temple L.Q. 365 (1929); Note, 37 Harv. L. Rev.
744 (1924).  Because we do not have standing courts, the
military justice system appears ill-suited to this form of
relief, as this Court recently acknowledged.  See Loving, 62
M.J. at 251-55.  The majority's attempt to transmogrify the CCA
into a trial court for the purpose of the analysis in this case
is unfounded.  The CCA is in no better position to rule on a
writ coram nobis than the federal courts or we are.  None were
the original trial court.

Today's decision is disturbing.  By asserting it can act on a final case involving a person who is not within Article 2, UCMJ, and ignoring the clear language of the statutory scheme, the Court effectively asserts that it can review any case, at any time.  There is now no terminal point for this Court's jurisdiction.

### III.  Clinton v. Goldsmith Redux?

The justification for today's opinion rests on tautologies, such as "Congress enacted the UCMJ under its power to regulate the armed forces," and "the military is an institution with distinct traditions and disciplinary concerns."  These are truisms, and thus no doubt true.  Of course, it is also true that Denedo is lawfully discharged from the military and that the Constitution only grants Congress the power, vis-à-vis this Court, to "make Rules for the Government and Regulation of the land and naval Forces."  U.S. Const. art. I, § 8, cl. 14.

But the majority's justification is troubling not so much because it is misplaced, but because it is highly reminiscent of the position of this Court prior to the Supreme Court's decision in Clinton v. Goldsmith.  At that time this Court, without statutory authority, asserted it had collateral review power over cases that were final.[9]   Garrett v. Lowe, 39 M.J. 293, 295

---

[9] Goldsmith was a final case heard on collateral review. 526 U.S. at 532-33.  While the Supreme Court could have decided Goldsmith

(C.M.A. 1994); Del Prado v. United States, 23 C.M.A. 132, 133-34, 48 C.M.R. 748, 749-50 (1974); United States v. Frischholz, 16 C.M.A. 150, 151-53, 36 C.M.R. 306, 307-09 (1966).

It was upon those decisions, and the analysis that underlay them, that this Court's decision in Goldsmith rested. See, e.g., Goldsmith v. Clinton, 48 M.J. 84, 86 n.3 (C.A.A.F. 1998) (citing Frischholz, 16 C.M.A. at 151-52, 36 C.M.R. at 308 (stating that Article 67, UCMJ, does not describe the full powers of this Court; rather, the Court also possesses incidental powers as part of its responsibility under the UCMJ to protect the constitutional rights of members of the armed forces), and Gale v. United States, 17 C.M.A. 40, 42, 37 C.M.R. 304, 306 (1967) (stating that Congress intended to grant this Court "supervisory power over the administration of military justice")).  Those decisions, contrary to the well-established principle of expressly limited jurisdiction of Article I courts, were based on the notion that this Court had plenary power over the administration of military justice and all things over which it once had jurisdiction.  See Goldsmith, 48 M.J. at 86-87

---

based on finality, that issue was not raised, and it decided the case based on an arguably more important jurisdictional theory -- that this Court does not have plenary power over everyone and everything that has, at some point, touched the military justice system.  Id. at 536.  Applying the logic of the Court's opinion in Goldsmith -- a strict interpretation of this Court's legislative grant of authority -- to Articles 2, 67, and 76, UCMJ, yields a result opposite to the conclusion reached by the majority in this case.

(stating that "Congress intended for this Court to have broad responsibility with respect to the administration of military justice"). Given that this analytic framework was expressly rejected by the Supreme Court when it reversed our decision in Goldsmith, it is both significant and surprising that the majority relies upon these cases today.

When the Supreme Court overturned this Court's Goldsmith opinion, it made it clear that this Court occupied only a small plot of the judicial landscape, and that that plot was circumscribed by statute. Goldsmith, 526 U.S. at 533-35. Inexplicably, this Court appears determined not to heed the Supreme Court's unequivocal directive that it stay squarely within the express limits of statutory jurisdiction.[10]

IV. Denedo's Claims Are Not Uniquely Military
in Nature, and Collateral Review is
Not Foreclosed in an Article III Court

Today's decision is particularly odd given the facts of this case. The majority appears to argue that this Court must review Denedo's case because it involves unique aspects of

---

[10] The majority's reliance on footnote eleven of Goldsmith is misplaced. There, the Supreme Court cited, inter alia, Noyd v. Bond, 395 U.S. 683, 693-99 (1969), and Burns v. Wilson, 346 U.S. at 142, for the proposition that once a servicemember had exhausted his military remedies, final decisions of the military justice system could be collaterally reviewed under 28 U.S.C. § 2241(c) (2000), by Article III courts. In Goldsmith, the Supreme Court said nothing about collateral review of final judgments by this Court after a petitioner had exhausted the remedies outlined in Article 76, UCMJ.

military justice.  If we do not review, the argument goes, no one can or will.  This logic is flawed, as both premises are unsound.

First, there is nothing uniquely military about this case. While this case, or any case for that matter, can be cloaked in military justice rhetoric, this is essentially a garden variety claim of ineffective assistance of counsel, coupled with an argument regarding an immigration problem.

Denedo, who is a civilian, claims he could not have raised his Sixth Amendment claim before now.  This constitutional claim is grounded in conversations that transpired between Denedo and his civilian defense counsel and the intricacies of federal immigration law.  Neither this Court nor the CCA has a record of Denedo's conversation with his civilian lawyer, special knowledge beyond that of an Article III court of the myriad ways to prove ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984), or any expertise with respect to immigration law.  There is no colorable argument that this Court is in a better position to review this claim than an Article III court.

Nor is it correct that this Court is the sole option on collateral review if the correct standard is applied.  The fact that this Court had not weighed in on Denedo's claim would not have been dispositive of whether an Article III court would

address the merits of his claim, because he claims that he only recently learned of violation of his constitutional rights, i.e., after direct review was completed. Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir. 2003) (citing Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 811 (10th Cir. 1993)) (stating that there is an exception to exhaustion and waiver requirements on collateral review when the petitioner can show actual prejudice and good cause why the petition had not been previously brought); Hatheway v. Sec'y of Army, 641 F.2d 1376, 1380 (9th Cir. 1981), abrogated on other grounds by High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563 (9th Cir. 1990) (Article III courts will collaterally review a final court-martial when the military courts have not given "full and fair consideration" to the petitioner's claim); Calley v. Callaway, 519 F.2d 184, 203 (5th Cir. 1975) ("Military court-martial convictions are subject to collateral review by federal civil courts . . . where . . . exceptional circumstances have been presented which are so fundamentally defective as to result in a miscarriage of justice."). A federal court may or may not determine that Denedo's claim constitutes a serious constitutional claim warranting collateral review of a final judgment. See Matias v. United States, 923 F.2d. 821, 825 (Fed. Cir. 1990). But if it determines review is warranted, there is nothing to prevent its review or development of facts not

22

resolved by military courts because they arose after the case was final and the military justice system had no jurisdiction under the UCMJ.

The majority's discussion of the collateral review exhaustion requirement ignores the point that the exhaustion problem is one that it creates today. The majority opinion relies on four federal district court cases for the proposition that an Article III Court will not entertain Denedo's writ. Tatum v. United States, No. RDB-06-2307, 2007 U.S. Dist. LEXIS 61947, at *12-*13, 2007 WL 2316275 at *7 (D. Md. Aug. 7, 2007); Fricke v. Sec'y of the Navy, No. 03-3412-RDR, 2006 U.S. Dist. LEXIS 36548, at *9-*14, 2006 WL 1580979 at *2-*5 (D. Kan. June 5, 2006); MacLean v. United States, No. 02-CV-2250-K, 2003 U.S. Dist. LEXIS 27219, at *13-*15 (S.D. Cal. June 6, 2003); Parker v. Tillery, No. 95-3342-RDR, 1998 U.S. Dist. LEXIS 8399, at *3-*5, 1998 WL 295574 at *1-*2 (D. Kan. May 22, 1998). But none of those cases addresses evidence discovered after the petitioner's case was final, and each assumes that the petitioner could have brought an extraordinary writ in the military justice system. If this Court had held that no jurisdiction exists over either a civilian with no relationship to the military or a case once it is final under Article 76, UCMJ, Denedo would have been able to file his claim in an Article III court without fear of a dismissal based on exhaustion.

## V.    Conclusion

There is no question that Congress intended this Court to be the final court of review within the military justice system and to review those cases and matters it placed within our limited grant of jurisdiction.  Those judgments are entitled to deference by the Article III Courts, which generally will not conduct de novo review of claims we have considered or permit collateral review of questions of fact we resolved.  United States ex rel. New v. Rumsfeld, 448 F.3d 403, 409 (D.C. Cir. 2006); Witham, 355 F.3d at 505; McElhaney v. Erker, 98 Fed. Appx. 417, 418 (6th Cir. 2004); Roberts, 321 F.3d at 995; Brosius v. Warden, 278 F.3d 239, 245 (3d Cir. 2002); Matias, 923 F.2d. at 826; Hatheway, 641 F.2d at 1379; Allen v. VanCantfort, 436 F.2d 625, 629 (1st Cir. 1971); Harris v. Ciccone, 417 F.2d 479, 481 (8th Cir. 1969); see also 129 Cong. Rec. 24, 34,312-13 (1983).

But the statutory scheme does not permit this Court to exercise jurisdiction over a civilian's case that is final, in derogation of Articles 2, 67, 69, 73, and 76, UCMJ, and in the absence of a specific legislative grant of authority.  On the contrary, the scheme suggests that in the absence of a military remedy, a petitioner may seek relief from an Article III court.  As the statutory scheme does not confer jurisdiction over a civilian who has severed all connection to the military or allow

for review once a decision is final under Article 76, UCMJ, I believe the Court should dismiss Denedo's petition, thereby allowing him to pursue his claim in an Article III court.[11] "Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts." Reid, 354 U.S. at 21. Today we encroach on Article III jurisdiction without reason. I respectfully dissent.

---

[11] Because I conclude that the Court does not have jurisdiction, I would not reach the substantive issue in this case. I do note, however, that the majority appears to ignore the most recent precedent on the intersection of ineffective assistance of counsel and the collateral consequences of a court-martial, United States v. Miller, 63 M.J. 452 (C.A.A.F. 2006), as well as precedents that are contrary to United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005). See Jiminez v. United States, 154 Fed. Appx. 540, 541 (7th Cir. 2005); Broomes v. Ashcroft, 358 F.3d 1251, 1257 (10th Cir. 2004); United States v. Gonzalez, 202 F.3d 20, 25-28 (1st Cir. 2000).